```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
                                    )
ALIFAX HOLDING SPA; and  SIRE       )
ANALYTICAL SYSTEMS SRL,             )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )   C.A. No. 14-440 S
                                    )
ALCOR SCIENTIFIC, INC.; and         )
FRANCESCO A. FRAPPA,                )
                                    )
            Defendants.             )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Plaintiff Alifax Holding SpA ("Alifax") brought this action against Defendants, Francesco A. Frappa ("Frappa"), a former employee of Sire Analytical Systems Srl ("Sire") (a subsidiary of Alifax), and Alcor Scientific, Inc. ("Alcor"), Frappa's new employer, alleging patent infringement (Count One), misappropriation of trade secrets (Count Two), and breach of a confidential relationship (Count Three). (Compl. ¶¶ 3-4, 59-74, ECF No. 1.) Defendants moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts Two and Three; Defendants have also moved, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike the component of Alifax's prayer for relief that seeks imposition of a constructive trust in one of Alcor's patents. (ECF No. 10.)

After holding argument on Defendants' motion, the Court permitted Alifax to file an amended complaint to address a real-party-in-interest concern. Alifax has since filed its amended complaint, which adds Sire as a party plaintiff and asserts the same three counts as Alifax's original complaint.[1] (See Am. Compl. ¶¶ 2, 54-75, ECF No. 20.) Defendants and Plaintiffs have also filed supplemental briefs. (ECF Nos. 21-22.)

In ruling on Defendants' motion to dismiss under Rule 12(b)(6), the Court must view the complaint in the light most favorable to Plaintiffs, taking all well-pled factual allegations as true and affording Plaintiffs the benefit of all reasonable inferences to be drawn from those allegations. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012). To survive a Rule 12(b)(6) motion, the complaint must plead a plausible entitlement to relief; in other words, "a plaintiff must plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Alex & Ani, LLC v. Elite Level Consult., LLC, 31 F. Supp. 3d 365, 370-71 (D.R.I. 2014)

---

[1] With the addition of Sire, it is unnecessary to consider the primary argument voiced in Defendants' motion: that Alifax was not the real party in interest to assert claims arising from Frappa's conduct, an argument Defendants characterized as one implicating considerations of standing. (See Defs.' Mot. 8, 10-11, ECF No. 10-1.) As Frappa's former employer, Sire is the real party in interest (and plainly has standing) to assert claims relating to Frappa's alleged malfeasance during (and in the immediate aftermath of) his employment with Sire.

(quoting Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009)).  On the other hand, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

I.   Count Three

Defendants first argue that the claim asserted in Count Three – breach of a confidential relationship – is preempted by the Rhode Island Uniform Trade Secrets Act ("RIUTSA"), see R.I. Gen. Laws §§ 6-41-1 to 6-41-11, which forms the basis of the claim asserted in Count Two (see Am. Compl. ¶¶ 60-69, ECF No. 20).  (See Defs.' Mot. 16-17, ECF No. 10-1; Defs.' Supplemental Mem. 2, ECF No. 21.)  Defendants also assert that Count Three fails because it is premised on Frappa's conduct that occurred after he left Sire's employ.  (See Defs.' Mot. 15-16, ECF No. 10-1.)  Finally, Defendants argue that Plaintiffs have not pled sufficient facts to establish that either Frappa or Alcor owed a duty of confidentiality to Alifax.  (See id. at 17-19; Defs.' Supplemental Mem. 2-3, ECF No. 21.)

Although these arguments might eventually prove meritorious, they cannot be accepted at this juncture.  Each rests on the premise that Rhode Island law applies to Count

3

Three.[2]  (See Defs.' Mot. 15-19, ECF No. 10-1; Defs.' Supplemental Mem. 1, ECF No. 21.)  Plaintiffs, by contrast, assert that Italian law applies to Count Three and that, under Italian law, the Amended Complaint states a cognizable claim for breach of a confidential relationship.  (See Pls.' Opp'n 9-10, 14, ECF No. 15.)  At the hearing, Defendants appeared to take issue with Plaintiffs' position that federal law applies to Count One, Rhode Island law applies to Count Two, and Italian law applies to Count Three.

However, Defendants' assumption that, because Count Two asserts a Rhode Island statutory claim, Rhode Island law must also apply to the common law claim asserted in Count Three overlooks "the principle of depecage." Putnam Res. v. Pateman, 958 F.2d 448, 464-65 (1st Cir. 1991).  As the First Circuit has explained:

> In legal parlance, depecage erects the framework under which different issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states. Although the Rhode Island Supreme Court has yet to pledge express allegiance to the principle of depecage, the court's decisions make it clear that Rhode Island, like most other jurisdictions, adheres to the principle in the tort context.

---

[2] Although the RIUTSA contains a preemption provision, it displaces only "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." R.I. Gen. Laws § 6-41-7(a) (emphasis added).

4

Id. (citations omitted); see also La Plante v. Am. Honda Motor Co., 27 F.3d 731, 741 (1st Cir. 1994); Oyola v. Burgos, 864 A.2d 624, 628 (R.I. 2005) (explaining that conflict-of-laws "questions are issue-specific"); Restatement (Second) of Conflict of Laws § 145 cmt. d (1971) ("Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states.").

Therefore, the substantive law applicable to Count Three cannot be automatically inferred from the substantive law applicable to Count Two; instead, to determine the law governing Count Three, the Court must conduct an analysis under Rhode Island's choice-of-law framework.  However, the parties have not adequately briefed or argued the choice-of-law issues with respect to Count Three.  A brief examination of the governing framework and the facts alleged in the Amended Complaint demonstrates that the requisite analysis cannot be conducted at this time.

Rhode Island's interest-weighing analysis, see Magnum Defense, Inc. v. Harbour Grp. Ltd., 248 F. Supp. 2d 64, 69 (D.R.I. 2003), entails close examination of "the particular . . . facts" to "determine therefrom the rights and liabilities of the parties in accordance with the law of the state that bears the most significant relationship to the events

5

and parties." Harodite Indus., Inc. v. Warren Elec. Corp., 24 A.3d 514, 534 (R.I. 2011) (quoting Cribb v. Augustyn, 696 A.2d 285, 288 (R.I. 1997)). In order to identify the appropriate jurisdiction, a court must examine several "policy considerations,"[3] as well as additional, tort-specific factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, "residence, nationality, place of incorporation and place of business of the parties"; and (4) the place where the relationship, if any, between the parties is centered. Id. (quoting Brown v. Church of Holy Name of Jesus, 252 A.2d 176, 179 (R.I. 1969)).

The facts alleged in the Amended Complaint (and the reasonable inferences to be drawn therefrom) do not point strongly towards either Rhode Island or Italian law. On the one hand, Plaintiffs are Italian companies, Frappa worked for Sire in Italy, and he now works for Alcor in Italy. (See Am. Compl. ¶¶ 1-3, ECF No. 20.) A permissible inference to be drawn from these allegations is that Frappa obtained Plaintiffs' confidential information in Italy. On the other hand, however,

---

[3] The policy considerations are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. See Harodite Indus., Inc. v. Warren Elec. Corp., 24 A.3d 514, 534 (R.I. 2011).

6

Alcor is a Rhode Island corporation (id. at ¶ 4), and the Amended Complaint does not allege the location where Frappa breached his fiduciary duty to Plaintiffs by disclosing the confidential information to Alcor. Cf. Magnum Defense, 248 F. Supp. 2d at 69 ("In a misappropriation of trade secrets case such as the present one, the defendants' wrongful conduct is said to take place where the defendants misused the plaintiff's confidential information for their benefit." (quoting Scully Signal Co. v. Joyal, 881 F. Supp. 727, 742 (D.R.I. 1995))).

Thus, at this early juncture and with the absence of adequate choice-of-law briefing from the parties, the Court is unwilling to determine what law applies to Count Three. Because Defendants' arguments for dismissal of that count all rely on the assumption that Rhode Island law governs, Defendants' motion is denied with respect to that count. See In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 8 n.2 (1st Cir. 2012) (district court denied a motion to dismiss that was premised on a choice-of-law issue because that issue was premature until some discovery occurred); Walker v. Unum Life Ins. Co. of Am., 530 F. Supp. 2d 351, 354 (D. Me. 2008) (similar). Rather, the issue of what law applies to Count Three would be more suitably addressed at the summary judgment stage, once the parties have had a full opportunity to develop the record.

II. Count Two

With respect to Count Two, Defendants argue that Plaintiffs have failed to identify any protectable trade secrets or to sufficiently allege misappropriation. (Defs.' Mot. 12-15, ECF No. 10-1.) Neither argument has merit. Under the RIUTSA, a "trade secret" is

> information . . . that: (i) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (ii) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.I. Gen. Laws § 6-41-1(4). The Amended Complaint identifies two groups of Plaintiffs' trade secrets: information relating to a project known as "Mecca"; and information relating to the use of ultrasound waves to disrupt and redistribute red-blood cells. (See Am. Compl. ¶¶ 25-31, ECF No. 20.) Defendants point out that the Mecca project was made public in Alifax's patent filing (Defs.' Mot. 12, ECF No. 10-1), which Defendants have attached as Exhibit C to their motion. (ECF No. 10-4.) However, the patent filing is dated February 6, 2014. (Id. at 2.) The Amended Complaint alleges that information relating to the Mecca project remained confidential until that patent filing. (Am. Compl. ¶ 30, ECF No. 20.) Frappa left Sire's employ on September 1, 2011. (Id. at ¶ 8.) Therefore, according to the

8

Amended Complaint, the information was "not . . . generally known to, and not . . . readily ascertainable by proper means by, other persons."[4] R.I. Gen. Laws § 6-41-1(4)(i).

Defendants also argue that Plaintiffs failed to allege that the identified trade secrets were "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.I. Gen. Laws § 6-41-1(4)(ii). (See Defs.' Mot. 13, ECF No. 10-1; Defs.' Reply 9-10, ECF No. 16; Defs.' Supplemental Mem. 3-4, ECF No. 21.) However, the Amended Complaint alleges that "[c]ommunications, such as email messages and product drawings, stipulated that the information contained in them was confidential company information." (Am. Compl. ¶ 38, ECF No. 20.)

With no citation to authority, Defendants contend that, as a matter of law, marking communications as confidential cannot alone constitute reasonable steps to maintain secrecy. (Defs.' Mot. 13, ECF No. 10-1; Defs.' Reply 9-10, ECF No. 16.) Because Defendants wholly abdicated their responsibility to adequately

---

[4] At oral argument, Defendants took a somewhat different tack. Noting that the Complaint alleges that the Mecca project was briefly suspended after Frappa left Sire's employment and then restarted and completed after he left, Defendants argue that the CPS technology that resulted from the Mecca project did not exist prior to Frappa's departure from Sire. Although this may be one plausible reading of the Complaint, it is not a reading that the Court can accept at this juncture. A reasonable inference that can (and, at this stage, must) be drawn from the allegations in the Amended Complaint is that Frappa knew of the CPS technology of the Mecca project.

develop this argument, it is not worthy of consideration.[5] See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . . Judges are not expected to be mindreaders.  Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or forever hold its peace." (citations and quotations omitted)).  Parenthetically, the Court notes that Defendants' unsupported argument that, as a rule of law, marking documents as confidential cannot qualify as reasonable efforts to maintain secrecy appears inconsistent with the RIUTSA, which requires an assessment of whether the efforts employed were "reasonable under the circumstances."  R.I. Gen. Laws § 6-41-1(4)(ii) (emphasis added).  In their supplemental memorandum, Defendants argue that Sire waived its trade secret protection with respect to the information by sharing it with Alifax, its corporate parent.  (See Defs.' Supplemental Mem. 4, ECF No. 21.)

---

[5] Curiously, Defendants chastise Plaintiffs in their Reply for failing to cite "any case law where marking documents as 'confidential' was alone sufficient."  (Defs.' Reply 10, ECF No. 16.)  Defendants have it backwards.  It is not Plaintiffs' obligation (or the obligation of this Court, for that matter) to unearth cases that contradict an argument for which no legal authority has been cited in support.

10

However, this argument is unaccompanied by a single citation to authority to support it, and, for this reason, the Court will not consider it.  See Zannino, 895 F.2d at 17.  For these reasons, the Amended Complaint identifies trade secrets under the RIUTSA.

Defendants' argument that Plaintiffs failed to allege misappropriation of trade secrets (Defs.' Mot. 13-15, ECF No. 10-1) fares no better.  Under the RIUTSA, "misappropriation" means:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who:
> (A) Used improper means to acquire knowledge of the trade secret; or
> (B) At the time of disclosure or use, knew or had reason to know, that his or her knowledge of the trade secret was:
> (I) Derived from or through a person who had utilized improper means to acquire it;
> (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> (C) Before a material change of his or her position, knew or had reason to know, that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

R.I. Gen. Laws § 6-41-1(2).  The RIUTSA defines "improper means" to "include[ ] theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or

11

espionage through electronic or other means." R.I. Gen. Laws § 6-41-1(1).

Before the Amended Complaint was filed, Defendants argued that the Complaint does not identify the "improper means" used by Defendants and, to the extent that the improper means are premised on Frappa's breach of a duty to Alifax to maintain the secrecy of the trade secrets, see id. § 6-41-1(1), "it cannot reasonably be inferred from the Complaint that Frappa owed any contractual, statutory[,] or common law duty to Alifax" because Frappa was employed by Sire and not Alifax. (See Defs.' Mot. 14-15, ECF No. 10-1.) With the Amended Complaint's addition of Sire as a party plaintiff, this argument is no longer a ground for dismissing Count Two, at least as to Sire. (See Am. Compl. ¶ 33, ECF No. 20.) Moreover, even if Defendants still assert this argument with respect to Alifax (or Sire, for that matter), Count Two should not be dismissed on this ground.

Under Rhode Island law,[6] "a fiduciary relationship arises when one party 'rightfully reposes trust and confidence' in another." T.G. Plastics Trading Co. v. Toray Plastics (Am.), Inc., 958 F. Supp. 2d 315, 327 (D.R.I. 2013) (quoting A. Teixeira & Co. v. Teixeira, 699 A.2d 1383, 1387 (R.I. 1997)).

---

[6] For present purposes, this Court assumes, without deciding, that Rhode Island law applies to the issue of whether Frappa owed a duty to Alifax for purposes of the RIUTSA claim asserted in Count Two. But cf. supra Part I (discussion of depecage).

12

Determining whether such a relationship exists "is a fact-intensive inquiry," A. Teixeira, 699 A.2d at 1387, and "[t]here are no hard and fast rules about when a confidential relationship will be found," Fleet Nat'l Bank v. Liuzzo, 766 F. Supp. 61, 68 (D.R.I. 1991) (quoting Simpson v. Dailey, 496 A.2d 126, 129 (R.I. 1985)).  "The court may consider a variety of factors, including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow the other's guidance in complicated transactions." Liuzzo, 766 F. Supp. at 68 (quoting Simpson, 496 A.2d at 129).  An employer can assert a breach-of-fiduciary-duty claim against an employee in some circumstances.  See Long v. Atlantic PBS, Inc., 681 A.2d 249, 252-53 (R.I. 1996); cf. Cahill v. Antonelli, 390 A.2d 936, 939 (R.I. 1978) ("The existence of an agency supports the finding that a confidential relationship was established between brother and sister, as an agent always stands in the position of a fiduciary to his principal.").  If the person owing the fiduciary duty discloses confidential information of the person to whom (or entity to which) the duty is owed, the duty may be breached.  See Liuzzo, 766 F. Supp. at 68-69.

In this case, the Complaint alleges enough to establish, at this stage, that Frappa acquired the confidential information

13

under circumstances giving rise to a duty to Sire and Alifax to maintain its secrecy or limit its use. During Frappa's employment with Sire, he was "intimately involved" in the design and development of Plaintiffs' ESR analyzers and was provided access to all of the Plaintiffs' proprietary, confidential, and trade-secret information relating to the ESR analyzers, including information relating to the Mecca project and the use of ultrasound waves. (Am. Compl. ¶¶ 24-25, 27-28, 31, ECF No. 20.) Plaintiffs took steps to mark this confidential information as such, and its employees understood that this confidential information was not to be shared with outside persons or entities. (See id. at ¶¶ 35, 38.) Given the fact-intensive nature of the inquiry, these allegations are sufficient, at this stage, to establish that Frappa owed a fiduciary duty to protect Plaintiffs' trade secrets, either because Plaintiffs "'rightfully repose[d] trust and confidence' in [Frappa]," T.G. Plastics, 958 F. Supp. at 327 (quoting A. Teixeira, 699 A.2d at 1387), or because Frappa was Plaintiffs' agent, see Cahill, 390 A.2d at 939.

Defendants next contend that the Amended Complaint "never ties any particular trade secret to any use or disclosure by Frappa or Alcor" and that "nowhere in the Complaint does Alifax contend that either purported 'trade secret' was incorporated into any product sold by Alcor." (Defs.' Mot. 14, ECF No. 10-

14

1.) But the RIUTSA does not require that the misappropriator use or disclose the trade secret or incorporate it into a product. Rather, acquisition of a trade secret, with knowledge that it was acquired by improper means, is sufficient. R.I. Gen. Laws § 6-41-1(2)(i). Moreover, even though it is not required to do so, the Amended Complaint does allege that both trade secrets were used by Defendants; the Mecca project information was used in Alcor's development of a competing ESR analyzer, and the ultrasound information was used in Alcor's patent. (Am. Compl. ¶¶ 45-47, ECF No. 20.)

Defendants also argue that, beyond a conclusory allegation that Alcor knew or had reason to know that Frappa acquired the information by improper means, there is no allegation in the Amended Complaint establishing that Alcor had the requisite knowledge. (Defs.' Mot. 13-15, ECF No. 10-1.) This argument is meritless. Plaintiffs have sufficiently alleged that Frappa owed Plaintiffs a duty to maintain secrecy; that Frappa joined Alcor immediately after his resignation from Sire; and that, within a year of Frappa's departure, Alcor put out a competing ESR analyzer and, shortly thereafter, filed an application for a patent that incorporated Plaintiffs' ultrasound information. (See Am. Compl. ¶¶ 43-47, ECF No. 20.) At this stage of this case, it is a reasonable inference from the facts alleged, including the short turn-around time of Alcor's ESR analyzer and

15

the absence of competing ESR analyzers prior to Alcor's, that Alcor knew or should have known that Frappa was improperly disclosing Plaintiffs' trade secrets.  Cf. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 19 (1st Cir. 2009) ("Viewing the evidence in the light most favorable to the verdict, it is a logical inference that a competitor who hires away a rival's valued employee with access to inside information has done so in order to use that inside information to compete with the rival, and it is an equally logical inference that once Plant became a Nihon Kohden employee, he sought to justify its hiring decision by revealing and using the information Nihon Kohden had bargained for.").

For these reasons, Defendants' motion to dismiss Count Two for failure to state a claim is denied.

III. Constructive Trust

Finally, Defendants argue that this Court should strike Plaintiffs' request for a constructive trust in Alcor's patent because there is no authority for such a remedy.  (Defs.' Mot. 19-21, ECF No. 10-1.)  Under Rhode Island law, "[t]he underlying principle of a constructive trust is the equitable prevention of unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained by fraud or in violation of a fiduciary or confidential relationship."  Connor v. Schlemmer, 996 A.2d 98, 109 (R.I.

16

2010) (quoting Dellagrotta v. Dellagrotta, 873 A.2d 101, 111 (R.I. 2005)). "To demonstrate that the imposition of a constructive trust is appropriate, 'a plaintiff is required to show by clear and convincing evidence (1) that a fiduciary duty existed between the parties and (2) that either a breach of a promise or an act involving fraud occurred as a result of that relationship.'" Id. (quoting Manchester v. Pereira, 926 A.2d 1005, 1013 (R.I. 2007)).

Defendants assert that there is no case law supporting imposition of a constructive trust in these circumstances. (Defs.' Mot. 20, ECF No. 10-1.) However, in Bausch & Lomb, Inc. v. Alcon Labs., Inc., 64 F. Supp. 2d 233, 245 (W.D.N.Y. 1999), Alcon's former employee was exposed to confidential information during his employment with Alcon, left to take a position with Bausch & Lomb, and disclosed this information to Bausch & Lomb. Alcon alleged that Bausch & Lomb "made use of this information in obtaining [a particular] patent." Id. Alcon brought claims for misappropriation of trade secrets and unfair competition, and it sought a constructive trust in Bausch & Lomb's patent. Id. Bausch & Lomb moved for summary judgment with respect to Alcon's constructive-trust claim. Id. The court denied the motion, finding that Alcon had sufficient evidence to withstand summary judgment for a constructive trust under New York law,

17

which is similar to Rhode Island law on the elements of constructive trusts. See id. at 251-54.

Although the facts of this case and Bausch & Lomb might not be identical, there are enough similarities between the two cases that, if Alcon could withstand summary judgment in Bausch & Lomb, Plaintiffs can withstand Defendants' motion to strike at the pleadings stage.

IV. Conclusion

For these reasons, Defendants' motion to dismiss Counts Two and Three and to strike the request for imposition of a constructive trust is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

/s/ Wesmin
William E. Smith
Chief Judge
Date: September 28, 2015