UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
ALIFAX HOLDING SPA,            )
                               )
          Plaintiff,           )
                               )
     v.                        )        C.A. No. 14-440 WES
                               )
ALCOR SCIENTIFIC INC.; and     )
FRANCESCO A. FRAPPA,           )
                               )
          Defendants.          )
_____)
```

**MEMORANDUM & ORDER**

WILLIAM E. SMITH, CHIEF JUDGE.

This is an intellectual property dispute over sophisticated devices that analyze the erythrocyte sedimentation rate ("ESR") of human blood samples. Before the Court are cross motions to compel discovery concerning the source code for software that operates the parties' instruments as well as related testimony and documents. (See Pl.'s Mot. to Compel and Reopen Disc. ("Pl.'s Mot."), ECF No. 201; Defs.' Mot. to Reconsider or in the Alternative to Compel ("Defs.' Mot."), ECF No. 202). The parties have quarreled about their reciprocal source code productions for the better part of a year. Attempts to amicably resolve these issues, including a Court-requested meet and confer between counsel and their experts, have failed.

As further stated herein, Plaintiff Alifax Holding, SpA's Motion to Compel Inspection of Alcor Source Code and Bitbucket Repository and Motion to Reopen Discovery Relating to the Declaration of Defendant Frappa Dated May 8, 2018 (ECF No. 201) is GRANTED IN PART. Alcor shall make its source code and Bitbucket repository available for one additional inspection by Alifax's expert within fifteen days. Frappa's deposition will not be reopened, but the Court will permit Alifax to request production of Alcor's build files for eleven specific iSED instruments.

Although the Court declines to reconsider its October 16, 2018 ruling denying the request of Defendants Alcor Scientific, Inc. and Francesco Frappa for sanctions against Alifax (ECF No. 195), it GRANTS the Defendants' request to compel Alifax to produce its "complete source code," including the tools comprising its code environment that are necessary to recreate its source code for any point during the relevant time period.

I.  Background

Only a digest of this dispute's history is required here. Frappa was employed by a former subsidiary of Alifax for nearly a decade before departing the company to work with Alcor in late 2011. Both parties manufacture competing ESR analyzers that deliver rapid test results in about 20 seconds. (See Second Am. & Suppl. Compl. ¶ 8, ECF No. 68.) Among other claims, Alifax has accused the Defendants of misappropriating a proprietary

conversion algorithm that it uses in its analyzers' software.  More particularly, Alifax contends that Alcor incorporated the conversion parameters from its algorithm into an early version of the software code for its iSED analyzer.  (See generally id.)  Alifax alleges that this software, known as version 1.04A, was installed on a number of iSED units at the time Alcor sold them to customers in early 2013.  (See, e.g., Pl.'s Mot. 3-4.)

The Defendants dispute Alifax's claims.  Their defenses include that Alifax's conversion parameters could not have been misappropriated because such parameters are device-specific and therefore have no independent value.  (Mem. In Supp. of Defs.' Mot. 2, ECF No. 203.)  Alcor also argues that Alifax introduced ESR analyzers that do not use the allegedly misappropriated code and adjusted its code to accommodate device design changes after Frappa's departure.  (Id.)  Thus, as Magistrate Judge Almond's ruling on the Defendants' first motion to compel made clear, a thorough understanding of the development of the source code for each device is fundamental to the parties' claims and defenses. (See Mem. & Order 3-4, ECF No. 127.)

II.  Discussion

A.    Access to the Bitbucket Repository

Alifax seeks further access to Alcor's source code and Bitbucket repository, which the Court understands is a version control tool that tracks and manages changes to a file system.  Alcor has

3

declined, however, to presently provide further access to this data because (1) it remains unsatisfied with Alifax's reciprocal source code production, and (2) Alifax's expert has already had several opportunities to view these materials.

Whatever shortcomings may exist in Alifax's source code production, the Court will not condone measure-for-measure reprisals. Each party has an independent obligation to produce relevant, discoverable information. Alcor's obligations are not contingent on an Alifax's performance. See, e.g., Fed. R. Civ. P. 26(d)(2) ("[D]iscovery by one party does not require any other party to delay its discovery"); Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644, 653 (N.D. Cal. 2004) (finding party may not "condition its compliance with its discovery obligations on receiving discovery from its opponent."); Pulsecard, Inc. v. Discover Card Servs., Inc., 168 F.R.D. 295, 308 (D. Kan. 1996) ("A party may not withhold discovery solely because it has not obtained to its satisfaction other discovery.").

Alcor has repeatedly stated that it will provide Alifax's expert with an additional opportunity to view the repository "prior to trial." (See, e.g., Craig M. Scott Decl. ¶ 7, ECF No. 204-4.) It has not argued that permitting an inspection now, rather than even closer to trial, would be unduly burdensome. On the contrary, it has represented that it "remain[s] prepared" to make its source code and its Bitbucket repository available. (Id.)

Accordingly, Alcor shall permit Alifax's expert one additional opportunity to inspect its source code and Bitbucket repository within fifteen days of the issuance of this order. Alifax's expert shall inspect the Bitbucket repository in accordance with the terms of the Stipulated Protective Order (ECF No. 41) and may do so for at least eight (8) hours, if necessary. Further inspections shall only be permitted by Court order or stipulation.[1]

B.    The Frappa Deposition

Alifax also asks to re-open Defendant Frappa's deposition to question him about allegedly new assertions made in his May 8, 2018 declaration in support of Alcor's Reply Memorandum in Further Support of Defendants' Motion for Summary Judgment (ECF No. 171-7). (See Pl.'s Reply 3, ECF No. 206.)  Whether to re-open discovery is a question of "informed discretion." Fusco v. Gen. Motors Corp., 11 F.3d 259, 267 (1st Cir. 1993).  The Court is not persuaded that good cause exists to do so here.  See Fed. R. Civ. P. 16(b)(4); Down E. Energy Corp. v. Niagara Fire Ins. Co., 176 F.3d 7, 13 (1st Cir. 1999) (holding no abuse of discretion where district court declined to reopen discovery in the absence of good cause).

Frappa's May 8, 2018 declaration addresses the development of the iSED's source code.  (See generally Frappa Decl., ECF No. 171-

_____

[1] The parties may arrange for Alifax's expert to access the source code and Bitbucket repository on a date beyond the period stated here or on more liberal terms by stipulation.

7.)  Alifax could have questioned Frappa about this topic based on the discovery produced prior to his September 14, 2017 deposition. Just a month and a half earlier, Alifax's expert reviewed Alcor's source code and Bitbucket repository.  (See Pl.'s Mot. 6.)  Alcor had also produced an "iSED production list" identifying the software installed on each device.  (See Craig M. Scott Decl. ¶ 2.) Alifax argues that this list was incomplete or unclear, but any ambiguity was diminished by Alcor's 30(b)(6) representative, who explained that the list did not consistently specify the software version installed at the time of manufacture if the device was later serviced and therefore upgraded.  (See Craig M. Scott Decl. Ex. B at 46-49.)

Armed with these facts, as well as an express belief that Frappa had a supervisory role in designing and producing the iSED (see Second Am. & Suppl. Compl. ¶¶ 7-9), Alifax could have questioned Frappa about any lingering ambiguities.  It did not.  See Williamson v. Horizon Lines LLC, 248 F.R.D. 79, 82-83 (D. Me. 2008) (finding no "manifest injustice" to support reopening deposition as party "should have acted during the discovery period to assure the completeness and accuracy of the [document]" but elected not to depose individuals on that topic).  Alifax will have an ample opportunity to test Frappa's May 8, 2018 assertions against its expert's conclusions after further examination of the Bitbucket

repository and to attack any inaccurate statements by cross-exam-
ination at trial. Frappa's deposition will thus remain closed.

C.  Alcor's Build Files for iSED Devices

Lastly, Alifax seeks to compel Alcor to produce its "build
records" for eleven iSED devices.  (See Pl.'s Mot. at 8-9.)  As
Alcor argues, however, Alifax fails to point to a document request
that called for Alcor to produce these specific records.  (See
Defs.' Opp'n 9 n.4, ECF No. 204-2.)  Instead, it relies on a topic
propounded in advance of a Rule 30(b)(6) deposition and an agree-
ment to accept Alcor's iSED production list in lieu of extended
questioning.  (See Pl.'s Mot. 8.)  Discovery cannot be compelled
absent a party's alleged failure to comply with a predicate re-
quest. See Fed. R. Civ. P. 37(a)(3)(B)(iv).

The Court acknowledges, however, that these documents are
relevant to critical disputes in this action.  Moreover, the Fed-
eral Rules of Civil Procedure reflect that a party may be ordered
to produce additional materials if the party's response is "evasive
or incomplete." Fed. R. Civ. P. 37(a)(4).  The iSED production
list was arguably vague or incomplete, even if Alcor's 30(b)(6)
representative clarified some ambiguities.  Alcor has not argued
that producing the build records would be unduly burdensome.  Ac-
cordingly, the Court will permit Alifax to propound one narrow

request for production on Alcor seeking its build records for the eleven instruments identified in its motion.[2]

D.    Production of Alifax's "Complete Source Code"

Turning to the Defendants' motion for reconsideration, or in the alternative to compel, the Defendants' argue that Alifax still has not produced its "complete source code," by which it means files sufficient "to recreate Alifax's source code for any given point in time."[3]    (See Mem. In Supp. of Defs.' Mot. 3.)

First, the Court denies the Defendants' request to reconsider its earlier ruling declining to impose sanctions on Alifax.    (See Mem. & Order, ECF No. 195.) The Defendants have not argued that

---

[2] Alifax has expressed a willingness to stipulate to the software installed on the iSED devices in lieu of further production.    The parties may decide for themselves whether such an agreement is preferable.

[3] These files are comprised of:

1.    The complete version control repositories for all Alifax ESR devices;

2.    All version control files (not just the most recent), all build files, make files, scripts and other files containing all of the instructions that are required to invoke (a) the compiler, (b) the linker, and (c) other software tools that are used to transform the devices' source code into the final, executable program(s) that run on the product (e.g. any custom libraries of pre-compiled code);

3.    All versions of the Alifax source code for its ESR products; and

4.    Any other source code files stored on Alifax's old repository.

(See Defs.' Mot. 1.)

the court made a "manifest error of law" or "patently misunder-stood" the Defendants' argument. See In re Loestrin 24 Fe Antitrust Litig., No. 1:13-MD-2472-S-PAS, 2014 WL 7883527, at *1 (D.R.I. Feb. 17, 2014) (quoting Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81–82 (1st Cir.2008)). There is accordingly no reason to revisit the issue.

Regardless, the parties' statements make clear that most of this particular dispute has been resolved. (See Pl.'s Opp'n 2-3, ECF No. 205.) Alifax has represented that it is "prepared to im-mediately produce all of the materials that [fall] within Alcor's definition of 'complete source code,' with the exception of li-censed software." (Id.) Alifax will be held to this representa-tion.

The remaining bone of contention is whether Alifax must pro-duce its "C Compiler, linker and other software tools" that it contends are licensed only to Alifax and are otherwise publicly available for purchase.[4] Specific ambiguities aside, the over-arching import of Magistrate Judge Almond's February 2, 2018 order was to compel production of materials sufficient to determine whether Alifax's post-2011 source code "changed in any material way." (Mem. & Order 3, ECF No. 127.) The substance of that order

---

[4] Alifax has not produced the license agreement to the De-fendants or the Court.

was not appealed, and it is undisputed that these tools are nec-
essary to accomplish such an analysis.   Furthermore, as Alcor
argues, Alifax's prior statements led the Court to believe that
Alifax either had already produced, or was willing and able to
produce, "all conceivable materials sought by Alcor."[5] (Mem. &
Order 12, ECF No. 195.)   It is reasonably clear that the software
tools Alcor seeks fall within the scope of Alifax's broad repre-
sentation, particularly as Alcor expressly referenced such tools
in its motion for sanctions.   (See Defs.' Mem. In Supp. of Their
Mot. for Rule 37 Sanctions 6, ECF No. 151-1.)

Alifax bridles at producing the requested programs, but cites
no law holding that software tools are not discoverable as elec-
tronically stored information.[6] See Fed. R. Civ. P. 34.   At a

_____

[5] Specifically, in opposing Defendants' motion for sanctions,
Alifax stated that "all of the materials that could conceivably
constitute Collateral Materials, including materials that would
even arguably fall within Alcor's undefined request for 'other
files'" were "available to be loaded onto the 'review computer' .
. . ." (Pl.'s Opp'n to Mot. for Sanctions 2, ECF No. 152.) "Col-
lateral Materials" included "version files, control files, and
other files." (Id. at 1.) Alifax also represented that it had
"offered to produce additional materials constituting all related
'version control files' going back to 2010, which would allow Alcor
to identify and recreate the source code combinations that were
used to run Alifax's machines . . . at any given point in time,
which is the purpose of Alcor's request for the Collateral Mate-
rials." (Id., (emphasis added).)   It seems undisputed that Alcor
could not "recreate" the software without the requested tools.

[6] While Alcor's motion was pending, the parties submitted
status reports concerning their further attempts to resolve this
issue.  (See Status Report, ECF No. 209;  Notice by Alcor Scien-
tific, ECF No. 211.)   The reports indicate that no agreement has

minimum, the committee notes on the 2006 amendments to the rules suggest that, if reasonable, a producing party may be required to provide assistance with software applications to "translate" electronically stored information into a "reasonably usable form."[7] Alifax is in possession of the necessary tools and – other than the issue of its license – does not claim their production would cause it to incur any burden whatsoever. Under the particular circumstances of this case, the Court finds that the availability of the tools for purchase by the Defendants does not weigh heavily against their production.

The Court is skeptical of Alifax's contention that terms of its yet-to-be disclosed license agreement prohibit the limited

---

been reached regarding the production of Alifax's software tools. As the proposed solution to producing these tools is not before the Court, the Court takes no position on its suitability.

[7] The notes provide, in pertinent part:

> The responding party must produce electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. Rule 34(a) requires that, if necessary, a responding party "translate" information it produces into a "reasonably usable" form. Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information. . . .

Fed. R. Civ. P. 34, committee notes on 2006 amendments.

production of its software tools here.[8]  If Alifax believes in good faith that the terms of its license agreement prohibit the disclosure of the tools at issue despite this order, it shall immediately produce that agreement to Alcor and file the same with the Court.  If the Court determines that the agreement prohibits disclosure, Alifax will be ordered to produce the alternative files identified by the Defendants that will allow them to recreate Alifax's source code environment.  (<u>See</u> Defs.' Reply 5-6, ECF No. 207.)

III. Conclusion

For the foregoing reasons, Plaintiff Alifax Holding, SpA's Motion to Compel Inspection of Alcor Source Code and Bitbucket Repository and Motion to Reopen Discovery Relating to the Declaration of Defendant Frappa Dated May 8, 2018 (ECF No. 201.) is GRANTED IN PART.  Alcor shall make its source code and Bitbucket repository available for one additional inspection by Alifax's expert for no fewer than eight hours within fifteen days of the entry of this order.  Alifax shall furthermore be permitted to request production of Alcor's build files for eleven specific iSED instruments.  Any such request shall be made within seven days of

---

[8] Based on the Court's understanding of the review procedure, the tools are arguably never even leaving Alifax's control as they will be installed on a secure review laptop accessible only by experts and counsel.  Presumably the tools will be deleted after this litigation concludes.  They will not be transferred to Alcor for its general use.

the entry of this order. Alifax's request to re-open the deposition of Francesco Frappa is DENIED.

Defendants' Motion for Reconsideration, or, in the Alternative, to Compel Plaintiff to Produce Complete Source Code (ECF No. 202) is GRANTED IN PART. Alifax will produce the "C Compiler, linker and other software tools" requested by Alcor, along with the other source-code files it has agreed to produce. If Alifax believes in good faith that the terms of its license agreement prohibit the disclosure of the software tools at issue, it shall immediately produce that agreement to Alcor and file the same with the Court for a further determination. The Defendants' request that the Court reconsider denying the Defendants' Motion for Sanctions (ECF No. 195) is DENIED.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date: January 11, 2019