UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
ALIFAX HOLDING SPA,                 )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )    C.A. No. 14-440 WES
                                    )
ALCOR SCIENTIFIC INC.; and          )
FRANCESCO A. FRAPPA,                )
                                    )
        Defendants.                 )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendants' Motion to Exclude the Opinions of Expert Witness Christopher J. Bokhart (ECF No. 230). Mr. Bokhart has proffered opinions concerning damages for the Plaintiffs' claims of patent infringement, copyright infringement, and trade secret misappropriation. The Defendants have asked the Court to exclude Mr. Bokhart's opinions in their entirety. The Court heard extensive argument on this motion over two days; the motion was granted in part and denied in part in two earlier rulings.[1]

---

[1] The Court held Mr. Bokhart could opine concerning patent infringement damages; his opinion concerning copyright infringement damages has been excluded. See generally Mem. & Order, ECF No. 277.

The Court kept the remainder of the motion under advisement and bifurcated the trial into a liability phase and a damages phase. During trial, the claims narrowed. The copyright claim fell away with the exclusion of Mr. Bokhart's damages testimony; the patent infringement claim was withdrawn (with the Court entering judgment for the Defendants) after the evidence fell short of proving the allegations. Thus, the case has been narrowed to one alleging trade secret misappropriation and breach of a confidential relationship.

The Court held a lengthy conference with the parties to discuss the scope and admissibility of Mr. Bokhart's opinions after the jury returned a verdict finding liability on April 30, 2019. This order now addresses the last subject of Mr. Bokhart's opinions: damages for trade secret misappropriation.

For the reasons that follow, the Defendants' motion is GRANTED IN PART and Mr. Bokhart's opinions concerning trade secret misappropriation damages are EXCLUDED in their entirety.

I. Bokhart's Trade Secret Damages Opinion

Mr. Bokhart advances two damages theories based on these claims: (1) a general opinion that Alifax is entitled to recover "all earned revenue"[2] from the sale of Alcor's iSED analyzers

---

[2] Plaintiffs contend that the Restatement (Third) of Unfair Competition places the burden of apportioning revenues on the Defendants and that the Rhode Island Supreme Court would likely adopt

3

(including convoyed sales) from fiscal year 2012 through at least September 30, 2018, as unjust enrichment damages attributable to misappropriation of all "trade secrets"; and (2) a narrower opinion that Alifax is entitled to "head start" damages, i.e., unjust enrichment specifically arising from any temporal advantage obtained by the misappropriation of one particular trade secret — "the trade secret related to software and firmware . . . ."[3] See Expert Report of Christopher J. Bokhart ("Bokhart Rpt.") ¶¶ 189-93, ECF No. 237; Suppl. Expert Report of Christopher J. Bokhart ("Suppl. Rpt.") ¶ 11, Ex. 8.2A S n.3, ECF No. 237-1.

On April 30, 2019, the jury returned a verdict finding that the Defendants willfully misappropriated three trade secrets:

(1) Using a clear, plastic capillary photometer sensor ("CPS") in an automated ESR analyzer, but only through February 6, 2014;

(2) Portions of computer program source code concerning the conversion of photometric measurements, including source code containing four specific conversion constants ; and

(3) Information concerning an anemia factor set forth in trial exhibits 34 and 19.[4]

---

that burden-shifting framework. The Court intends to rule on this issue in a separate order.

[3] The Court interprets this passage as a reference to trade secret (2) above.

[4] The jury found that only Frappa misappropriated Alifax's "anemia factor" trade secret.

4

See Trial Tr. Vol. 10 at 14:21-15:18, 15:25-16:16. An earlier formulation of the "source code" trade secret included alleged code used by Alifax to obtain or acquire photometric measurements. See, e.g., Pl.'s Second Am. Identification of Misappropriated Trade Secrets ¶ 5, ECF No. 137-27. Over Alifax's objection, the Court declined to allow Alifax's "acquisition" theory to be presented to the jury due to a failure of proof at trial. See Charge Conf. Tr. at 11:9-16:4. Only "conversion" source code evidence was presented by Alifax during the liability phase.

II. Legal Standard

Rule 702 of the Federal Rules of Evidence instructs that an expert may only provide opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

See also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993). The Court, acting as gatekeeper, may exercise wide discretion to admit or exclude such testimony consistent with its obligation to ensure that the jury receives only relevant and reliable expert evidence. Morris v. Rhode Island Hosp., C.A. No. 13-304-ML, 2014 WL 3107296, *5 (D.R.I. July 7, 2014) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997)). And "while

methodology remains the central focus of a Daubert inquiry . . . trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998); Joiner, 522 U.S. at 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Mr. Bokhart's damages calculations need only be proven with "reasonable certainty." See, e.g., Grieco ex rel. Doe v. Napolitano, 813 A.2d 994, 998 (R.I. 2003). But any damages theory must be anchored on "sound economic and factual predicates." LaserDynamics, Inc. v. Quanta Comput., Inc., 694 F.3d 51, 67 (Fed. Cir. 2012) (quoting Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1311 (Fed. Cir. 2002). This principle applies to damages for trade secret misappropriation. See, e.g., Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC, 879 F.3d 1332, 1348 (Fed. Cir. 2018)("[A] reasonable royalty award 'must be based on the incremental value that the . . . invention adds to the end product.'" (quoting Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1226 (Fed. Cir. 2014)) (emphasis added)).

III. Discussion

    A.   Bokhart's "All Earned Revenue" Opinion

The Court concludes that Mr. Bokhart's opinion that Alifax is entitled to all earned revenue from Alcor's iSED-related sales as damages for misappropriation rests on an unsound factual basis and must be excluded.

The first flaw in Mr. Bokhart's methodology concerns the predicate facts tying his damages theory to the harm attributable to the alleged misappropriation. Citing only a "[d]iscussion with Bryan Bergeron," Bokhart Rpt. ¶ 192 n. 296, Plaintiff's technical expert, he states:

> I understand that Alifax's trade secrets have a direct, causal relationship to the ability to produce an ESR result in 20 seconds. Specifically, the trade secrets enabled Alcor to learn how to generate a signal when analyzing a blood sample and how to process that signal into an ESR value.

Id. at ¶ 192.[5] The Court has scoured Dr. Bergeron's disclosures and deposition testimony. He does not opine that any specific trade secret – or that Alifax's trade secrets combined – causes the iSED to produce ESR results in 20 seconds. Dr. Bergeron has expressed no opinion whatsoever concerning the plastic CPS or

---

    [5] While its meaning is by no means clear, the Court interprets the second sentence of this paragraph as a reference to the earlier formulation of trade secret (2) above, i.e., portions of computer program source code.

7

Alifax's research about myeloma and anemia.[6] And his conclusions about portions of Alifax's computer program code are strictly limited to considering whether these materials comprise trade secrets. See Expert Report of Bryan Bergeron ("Bergeron Rpt.") ¶ 7, ECF No. 144-11 (disclosing opinion that programming at issue "concerned information that has value from not being generally known to or readily ascertainable by other persons using proper means")

If Dr. Bergeron had other opinions about a competitive advantage obtained by Alcor from any alleged trade secret, they were not disclosed, and Mr. Bokhart cannot serve as his proxy. See Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 614 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science."). Without an opinion that – at a minimum – Alifax's proprietary computer code contributes to the iSED's 20-second results, Mr. Bokhart's "all earned revenue" opinion is nothing more than ipse dixit; it has no factual foundation. Such a shortcoming cannot be written off as merely affecting the weight of the evidence. See Irvine v. Murad Skin Research Labs., Inc., 194 F.3d 313, 321 (1st Cir. 1999) ("[T]he basic premise of the expert's opinion to justify damages

---

[6] This is undisputed. See Pl.'s Statement of Disputed Facts ¶¶ 98, 107, ECF No. 161-1.

8

. . . is flawed. Absent adequate factual data to support the expert's conclusions his testimony [is] unreliable."); Rothbaum v. Samsung Telecomms. Am., LLC, 52 F. Supp. 3d 185, 196 (D. Mass. 2014) (excluding opinions because they were "not supported by the data [the expert] cites, and they do not satisfy Rule 702's requirement that his testimony [be] based on sufficient facts or data" (quotation marks omitted)).

This flaw is underscored by Mr. Bokhart's failure to account for dramatic shifts in this action's factual landscape over time. Mr. Bokhart's initial report explains that Alifax first identified nearly a dozen misappropriated trade secrets. See Bokhart Rpt. ¶ 43. Since he issued that report, the number and nature of those trade secrets have narrowed significantly: just four trade secrets were presented to the jury. See Trial Tr. Vol. 10 at 13:22-14:13. Nevertheless, Mr. Bokhart neither decreased his damages calculation nor explained why no decrease is warranted.[7] Thus, his "all earned revenue" opinion is, on its face, unmoored to the scope of the alleged harm and must be excluded. See Joiner, 522 U.S. at 146.

---

[7] Mr. Bokhart's damages valuation has only increased over time due to additional iSED sales. See Suppl. Rpt. ¶ 11.

B.  Bokhart's "Head Start" Opinion

The Court reaches a similar conclusion regarding head start damages. In Mr. Bokhart's opinion, Alifax is entitled to unjust enrichment damages specifically arising from the temporal advantage Alcor obtained by misappropriating <u>one</u> trade secret "related to software and firmware . . . ." Suppl. Rpt. Ex. 8.2A S n.3. This conclusion, in turn, rests on a purported opinion from Dr. Bergeron that "Alcor's use of the trade secret related to software and firmware provided it an advantage of at least one month of development time." Suppl. Rpt. Ex. 8.2A S n.3. Mr. Bokhart provides no specific citation to Dr. Bergeron's report for this conclusion. <u>See</u> <u>id.</u> In his initial report, Dr. Bergeron opines that it would have taken "a skilled engineer . . . at least one entire month working full time just to program the <u>signal acquisition</u> features of the instrument." Bergeron Rpt. ¶ 44 (emphasis added). In his report, Dr. Bergeron does not opine concerning how long it would take an engineer, or any other person of skill, to program an instrument to <u>convert</u> photometric measurements to an ESR value.[8] Relying on other fact witnesses' testimony, Mr. Bokhart extrapolates that Dr. Bergeron's estimated one-month

---

[8] Dr. Bergeron states that he understands it took Alifax's researchers three years to develop a conversion algorithm, but offers no express opinion about whether that period reflects the time it would take to develop a method to convert photometric data into an ESR value. <u>See</u> Bergeron Rpt. ¶ 45.

10

delay would have in fact postponed the iSED's launch by at least a full year to coincide with the next clinical chemistry trade show. Suppl. Rpt. Ex. 8.2A S n.3. He concludes, therefore, that Alcor was unjustly enriched by at least one additional year of revenue as "head start" damages. Id.

The Defendants argue that this opinion should be excluded because (1) it was not disclosed in Mr. Bokhart's initial report; and (2) it is speculative. The Defendants are right to complain about the minimalist disclosure of Mr. Bokhart's head start opinion. His first report does not appear to reference such damages. So-called "head start" damages appear only in a lengthy footnote in an exhibit on page 69 of his 151-page supplemental report.[9] See Suppl. Rpt. Ex. 8.2A S n.3.

Under most circumstances, the Court would not consider such a disclosure adequate or timely under Fed. R. Civ. P. 26. Exclusion is the presumptive sanction for such a violation. See Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001). The Court is not, however, stripped of all discretion, particularly if the Defendants had been put on notice and were not unfairly prejudiced by the inadequate disclosure. See Santiago-Díaz v.

---

[9] Notably, when asked to direct the Court to where in the record Mr. Bokhart disclosed this opinion aside from this footnote, counsel pointed the Court to his deposition testimony rather than his initial report.

11

Laboratorio Clínico Y De Referencia Del Este, 456 F.3d 272, 276 (1st Cir. 2006). And here, it appears that the Defendants questioned Mr. Bokhart about the relationship between his trade-secret opinions and Dr. Bergeron's one-month estimate during his December 2017 deposition. See Bokhart Dep. 190-192, ECF No. 250-1. The record thus suggests that Defendants had some awareness of this theory or related concepts before January 2019.[10] Accordingly, under these peculiar circumstances, the adverse effects of any surprise do not, in and of themselves, merit total preclusion. See Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003) (stating "[s]urprise and prejudice" are the important factors in a district court's decision to preclude untimely expert testimony).

Even if Mr. Bokhart's opinion was sufficiently (if barely) disclosed, the Court concludes that, like his "all earned revenues" opinion, it proceeds from a flawed factual premise that cannot comport with any basis for the jury's verdict of misappropriation. Bokhart's "head start" analysis is wholly reliant on Dr. Bergeron's opinion that Alcor's "use of [Alifax's] trade secret related to software and firmware" provided it with a one-month advantage. But Dr. Bergeron's opinion was not general; it was specific. The alleged one-month advantage was expressly tied to programming "the

---

[10] The Court was provided only with excerpts of Mr. Bokhart's deposition; thus, it has been unable to review his complete testimony.

<u>signal acquisition</u> features of the instrument." Bergeron Rpt. ¶ 44 (emphasis added). It had nothing whatsoever to do with the trade secret that the jury found the Defendants misappropriated: source code concerning the <u>conversion</u> of photometric measurements. As noted above, there was no evidence presented in the liability phase of the trial pertaining to "signal acquisition" – all of the source code evidence related directly to the "conversion algorithm." This is a critical difference, and the jury was not given "signal acquisition" as an element of the trade secret because of this failure of proof. Thus, Mr. Bokhart's head start conclusions are derived from an opinion related to a trade secret theory the Court rejected as unsupported by the evidence. <u>See</u> Charge Conf. Tr. 11:9-16:4. Because the remaining theory has no relationship to a misappropriation found by the jury, it is unreliable and inadmissible.[11]

---

[11] The Court recognizes that Dr. Bergeron appeared to drift from his disclosed opinions by testifying at trial that "[i]t would definitely take months" to develop a "commercially viable conversion algorithm if you were starting from scratch[.]" Trial Tr. Vol. 3 at 115:23-116:1. As discussed above, however, this opinion is not disclosed in Dr. Bergeron's report. Federal Rule of Civil Procedure 26(a)(2)(D) establishes the timeline for expert disclosures and Rule 37(c) expressly prohibits a party from using information at trial that was not provided as required by Rule 26(a). Accordingly, the Court will not permit Mr. Bokhart offer an opinion based on another expert's conclusions voiced for the first time in his trial testimony.

13

IV. Conclusion

For the aforementioned reasons, Defendants' Motion to Exclude the Opinions of Expert Witness Christopher J. Bokhart (ECF No. 230) is GRANTED IN PART. Mr. Bokhart's opinions concerning trade secret misappropriation damages are EXCLUDED in their entirety.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date: April 30, 2019