```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                   )
ALIFAX HOLDING SPA,                )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )    C.A. No. WES 14-440
                                   )
ALCOR SCIENTIFIC INC.; and         )
FRANCESCO A. FRAPPA,               )
                                   )
        Defendants.                )
_____)

## **MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

At trial, Alifax's claims were gradually whittled down. Alifax Holding Spa v. Alcor Sci. Inc., 404 F. Supp. 3d 552, 558 (D.R.I. 2019). The jury returned a verdict in favor of Alifax, but the Court granted in part Defendants' renewed request for judgment as a matter of law and ruled that retrial was necessary on the claim that Defendants misappropriated Alifax's conversion algorithm. Id. at 582. Subsequent attempts at settlement failed repeatedly. During a conference in February, the Court instructed Defendants to file a motion addressing, inter alia, their request to file a renewed summary judgment motion and the scope of the new trial. The Court also invited the parties to submit supplemental memoranda regarding Alcor's Motion for an Exceptional Case

Determination Under the Patent Act and for Attorney and Expert Fees ("Alcor's Motion for Patent Legal Fees"), ECF No. 306.

For the reasons that follow, Defendants' request to file a renewed motion for summary judgment is DENIED, Defendants' request to limit the scope of the new trial is GRANTED IN PART, and Alcor's Motion for Patent Legal Fees is DENIED. The parties are instructed to submit further briefing, as explained below, regarding potential damages on the remaining claim.[1]

I. SUMMARY JUDGMENT

In a renewed motion for summary judgment, Alcor would argue that the four conversion constants are not trade secrets because they can be derived using simple regression analysis. See Defs.' Request for Case Management Order Permitting Alcor to File Mot. for Summ. J. and Set the Limited Scope of Any Second Trial ("Defs.' Mot. for CMO") 2-5, ECF No. 354. However, the Court already ruled on this issue in its post-trial decision:

> The jury's finding that the conversion algorithm was a trade secret was reasonably supported by Alifax's evidence. . . . Converting the optical data into a reliable, Westergren-correlated [erythrocyte sedimentation rate ("ESR")] value is a critical step in the process. . . . Duic testified that there were "no mathematical models in the market" for correlating optical signal data to Westergren results when Alifax developed its conversion algorithm. . . . Without a

---

[1] This decision assumes familiarity with the case. For additional background, the reader is referred to the Court's post-trial decision on Defendants' renewed request for judgment as a matter of law. See Alifax Holding Spa v. Alcor Sci. Inc., 404 F. Supp. 3d 552 (D.R.I. 2019).

2

> correlation algorithm, Alifax's instruments could not generate ESR results. The algorithm was not publicly known and not readily accessible to purchasers of Alifax instruments.

Alifax, 404 F. Supp. 3d at 567 (citations omitted). Moreover, Alcor's arguments regarding the ease of doing regression analysis via publicly available tools would likely require additional expert discovery. See Defs.' Mot. for CMO 5. As stated below, discovery closed years ago, and no new discovery will be allowed.

Alcor also argues that the conversion algorithm had no economic value in non-Alifax machines. See id. at 3-4. Again, this argument directly contradicts the Court's post-trial findings: "[A]t least one rational interpretation of the evidence supports the conclusion that Alcor made some use of Alifax's algorithm, indicating that the information confers some competitive advantage. This is enough evidence (if barely) to find that Alifax's conversion algorithm containing four specific constants had independent economic value from not being generally known or readily ascertainable." Alifax, 404 F. Supp. 3d at 567-68 (citing R.I. Gen. Laws § 6-41-1).

Alcor's last argument for summary judgment is that Alifax did not take sufficient steps to protect its purported trade secret. See Defs.' Mot. for CMO 4-5. Once more, this contention runs counter to a specific ruling of the Court: "[The] evidence was sufficient to support the jury's conclusion that Alifax's took

3

reasonable efforts under the circumstances to maintain the secrecy of its conversion algorithm." Alifax, 404 F. Supp. 3d at 568.

Thus, Alcor's request to file a second motion for summary judgment is, in fact, a motion for reconsideration of the Court's post-trial decision. As with any interlocutory ruling, that decision "'remain[s] open to . . . reconsideration' until the entry of [final] judgment." Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 4 (1st Cir. 2005) (quoting Geffon v. Micrion Corp., 249 F.3d 29, 38 (1st Cir. 2001)). However, for reasons recounted here and explained in the post-trial decision, reconsideration is not warranted. Therefore, Alcor's request for permission to file a renewed motion for summary judgment is denied.

II. SCOPE OF NEW TRIAL

In their Motion, Defendants raise three issues regarding the scope of the new trial.

A. New Evidence

Discovery in this case was extensive. More than four years elapsed between the filing of the original Complaint and the final close of discovery. See Compl., ECF No. 1 (filed Oct. 7, 2014); Jan. 11, 2019 Mem. & Order 2, ECF No. 212 (granting motion to compel the production of source code). The Court has issued dozens of written decisions regarding discovery disputes and substantive motions. See, e.g., Jan. 11, 2019 Mem. & Order (reopening discovery for limited purposes). At some point, enough is enough,

4

and that point has long passed.  For reasons of fairness and judicial efficiency, no new evidence or witnesses will be permitted.  See Fusco v. Gen. Motors Corp., 11 F.3d 259, 267 (1st Cir. 1993) ("[T]he discovery deadline had long since passed and the district court had no automatic obligation to reopen the discovery period.  The matter was one for the informed discretion of the trial judge, and the breadth of that discretion in managing pre-trial mechanics and discovery is very great."); Oriental Fin. Group, Inc. v. Fed. Ins. Co., 483 F. Supp. 2d 161, 167 (D.P.R. 2007) (barring new discovery where "the exclusion of new evidence would not result in manifest injustice to either party").

    B.    Signal Acquisition Trade Secret

At trial, Alifax sought to prove two software trade secrets, both of which were contained within the second count of its Second Amended Complaint.  See Second Am. Compl. ¶¶ 61-70, ECF No. 68.  The first involved the process by which Alifax's devices gathered ESR-related raw data through signal acquisition.  See Charge Conference Tr. 12-15, ECF No 345.  The second involved the algorithm that converted that raw data into Westergren-equivalent values.  See id.; Alifax, 404 F. Supp. 3d at 567-68. At the charge conference, the Court noted that all of the pertinent evidence "concern[ed] the use of the so-called four constants" in the conversion algorithm, and therefore ruled that the evidence would not "support a finding by the jury that source code or software

5

used in Alifax's analyzers were misappropriated to acquire the photometric measurements." Charge Conference Tr. 12; see also id. at 15-16.

Defendants now argue that this limitation should also apply to the new trial, thus barring Alifax from advancing a theory of misappropriation of a signal acquisition trade secret. Defs.' Mot. for CMO 9-10. In response, Alifax contends that a trial on solely the conversion algorithm, without a signal acquisition claim, "would inevitably cause confusion and uncertainty for the jurors, who would wonder why Alifax was not claiming that all its software was a trade secret." Pl.'s Mem. in Opp'n to Defs.' Request for Case Management Order ("Pl.'s Opp'n to Defs.' Mot. for CMO") 6, ECF No. 355.

A partial retrial is inappropriate "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Prods. Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931). Based on its extensive involvement in this case, the Court concludes that the distinction between signal acquisition and conversion can be readily grasped by a lay jury. Indeed, the complexity of this distinction is dwarfed by that of other concepts involved in Alifax's theory of liability. The signal acquisition claim "ha[s] been properly and conclusively resolved," and the remaining issue of the conversion constants is "so distinct and

6

separable from the [signal acquisition claim] that a trial [on the conversion constants] alone may be had without injustice." See Drumgold v. Callahan, 707 F.3d 28, 46 (1st Cir. 2013) (quoting Gasoline Prods., 283 U.S. at 500); see also Oriental Fin. Group, 483 F. Supp. 2d at 166 (holding that issue resolved at previous trial was "sufficiently separable [from remaining issues] to permit the former to be submitted to a new jury independently from the other issues without confusion or uncertainty" (citing Gasoline Prods., 283 U.S. at 500)).

Therefore, the scope of Alifax's claim on retrial will be limited to the conversion algorithm. Alifax will not be permitted to pursue its theory that Defendants misappropriated a signal acquisition trade secret.

C. Damages Expert

At trial, Alifax sought to introduce expert testimony from Christopher J. Bokhart on the issue of damages caused by trade secret misappropriation. April 30, 2019 Mem. & Order 2, ECF No. 288. In his expert report, Mr. Bokhart opined that Alifax was entitled (based on a theory of unjust enrichment) to all of Alcor's earned revenue from iSED sales. Id. at 3-4. The Court excluded this theory because it "rest[ed] on an unsound factual basis." Id. at 7. Additionally, Alifax sought to introduce Mr. Bokhart's opinion that Alifax was entitled to one year of iSED revenue based on a "head-start" theory. Id. at 4. However, the head-start

7

theory was dependent on Dr. Bryan Bergeron's statement that the software would take at least one month to create from scratch (which Mr. Bokhart expanded to a one-year head start based on trade show schedules). Id. at 10-11. As the Court noted, Dr. Bergeron never discussed the amount of time necessary to develop the conversion software; rather, he opined that the signal acquisition software would take a month to produce. Id.[2] Therefore, the Court excluded Mr. Bokhart's head-start testimony as "unreliable and inadmissible." Id. at 13.

As discussed, no new discovery will be allowed on retrial. Therefore, the Court's rulings on Defendants' Motion to Exclude the Opinions of Expert Witness Christopher J. Bokhart, ECF No. 230, will apply with full force at the second trial.

Defendants argue that, without Mr. Bokhart's testimony, Alifax has no evidence that the alleged misappropriation of trade secrets caused damages. See Defs.' Mot. for CMO 10, 13. Alifax does not provide a substantive response. See Pl.'s Opp'n to Defs.' Mot. for CMO 12-13. Instead, Alifax argues that the Court did not solicit briefing on this issue and that the matter should be left until later. See id. The Court disagrees. Within one week of the issuance of this decision, Alifax shall articulate its theory

---

[2] The Court's decision to exclude parts of Mr. Bokhart's testimony was issued after the liability phase (during which the signal acquisition claim was tossed out), but before the damages phase.

8

of damages in a filing of no more than five pages, with citations to any evidence that supports its theory. Moreover, if there is no admissible evidence regarding damages stemming from the alleged misappropriation of the conversion algorithm, Alifax must explain why it should not be limited to seeking nominal damages. Defendants shall file a reply of no more than five pages within three business days of the filing of Alifax's brief.

III. PATENT LEGAL FEES

Under 35 U.S.C. § 285, "[t]he court in exceptional [patent] cases may award reasonable attorney fees to the prevailing party." Invoking this provision, Alcor submitted a post-trial request for the legal fees it incurred defending the patent claims. See Alcor's Mot. for Patent Legal Fees 1. The Court denied the Motion as moot, stating that it could not ascertain which party had prevailed until after the new trial. Sept. 5, 2019 Text Order. However, at the February 25, 2021 conference, the Court invited the parties to submit supplemental briefing on the fee request. The Court has reconsidered its previous determination. As explained below, Alifax's patent claims were not exceptional, and Alcor's Motion for Patent Legal Fees must therefore be denied on the merits.

"[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the

9

facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. Relevant factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)). Absent misrepresentation regarding the evidence, a plaintiff's success on summary judgment indicates that its patent claims were not frivolous or unreasonable. See Medtronic Nav., Inc. v. BrainLAB Medizinische Computersysteme GmbH, 603 F.3d 943, 954 (Fed. Cir. 2010), and cases cited. The party seeking fees must prove exceptionality by a preponderance of the evidence. Octane Fitness, 572 U.S at 557-58.

Alcor's basic argument is that Alifax pulled a bait and switch regarding its theory of patent infringement. Alcor's Mot. for Patent Legal Fees 15-16. According to Alcor, Alifax represented to the Court that it would show literal infringement, all the while pursuing a theory based on the doctrine of equivalents.[3] Id.

---

[3] Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent

10

Furthermore, Alcor contends, Alifax was estopped from pursuing a doctrine-of-equivalents claim due to its actions during patent prosecution. Id. at 3.

Alifax's argument for literal infringement was always tenuous. However, the Court was well aware of the creativity inherent in Alifax's theory. The Court's summary judgment decision explains the needle that Alifax was attempting to thread and why the Court allowed the patent claims to go forward. Prior to summary judgment, the Court had construed the limitations in the two patents to mean "processing the acquired optical density or absorbance data to obtain the speed of sedimentation, viscosity, elasticity and density." Mar. 26, 2019 Mem. & Order 10, ECF No. 244 (citation and quotations omitted). And at summary judgment, the Court recognized that "the iSED does not measure, record, or report any measurement for the viscosity, elasticity, or density of blood." Id. However, the Court rejected Alcor's argument that "[o]btaining a parameter in the context of the patents-in-suit . . . means obtaining a numerical value for that parameter" and "that the iSED [therefore] does not 'obtain' these parameters."

---

claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997) (quoting Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609 (1950)).

11

Id. (citations and quotations omitted). This was because "[n]one of the asserted claims, as construed by the Court, include the limitation that the iSED measures, calculates, records, reports, or obtains a 'numerical value' for the parameters of viscosity, elasticity, and density of blood." Id. at 10-11.

But how could the iSED obtain those parameters if it did not produce a numerical value for them? The Court accepted (for the purposes of summary judgment) Dr. Bergeron's answer: the parameters "are a function of data obtained from the [iSED's] optical density readings; thus by processing optical density measurement data the iSED obtains the correlated parameters." Id. at 11 (citations and quotations omitted). At trial, though, Alifax's theory did not pan out. Dr. Bergeron testified, arguably inconsistently with his previous conclusions, that the iSED did not obtain viscosity, elasticity, or density, and Alifax decided to drop the patent claims. Trial Tr., Vol. 4, at 88:5-18, ECF No. 341; Trial Tr., Vol. 5, at 4-6, ECF No. 342.[4]

---

[4] The parties had trouble agreeing on a method for disposing of the patent claims, and the Court decided, with the parties' approval, to reconsider its summary judgment decision and grant judgment for Defendants on the patent claims. See Trial Tr., Vol. 5, at 76:22-78:7, ECF No. 342. This decision does not cast doubt on the Court's original decision to allow the patent claims to proceed to trial. Rather, the mid-trial reconsideration was based on Dr. Bergeron's trial testimony and Alifax's resulting decision to abandon those claims. See id.

12

Alcor thus argues that there was never a legitimate theory of literal infringement because the iSED did not actually obtain those parameters; instead, the iSED merely accomplished an equivalent task. Alcor's Mot. for Patent Legal Fees 8, 15. But this argument rehashes arguments that were rejected on summary judgment, where the Court ruled that Dr. Bergeron's opinion created a genuine issue of material fact as to whether the iSED literally infringed on the patents. Moreover, Alcor has not shown that Alifax misrepresented its evidence to the Court. Rather, the evidence shifted between summary judgment and trial. Thus, through its summary judgment decision, the Court indicated that the patent claims were "suitable for resolution at trial." Medtronic, 603 F.3d at 954.

Based on its extensive involvement – lasting the better part of a decade – with this litigation, the Court determines that this case does not "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, 572 U.S. at 554. Accordingly, the Court withdraws its previous decision to defer ruling. See Sept. 5, 2019 Text Order. Alcor's Motion for Patent Legal Fees is denied on the merits.

IV. CONCLUSION

For the reasons contained herein, Defendants' request to file a renewed motion for summary judgment is DENIED, Defendants'

13

request to limit the scope of the new trial is GRANTED IN PART, and Defendant's Motion for Patent Legal Fees, ECF No. 306, is DENIED.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date: July 16, 2021