# EXHIBIT C

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ALIFAX HOLDING SPA,<br><br>Plaintiff,<br><br>v.<br><br>ALCOR SCIENTIFIC INC. and<br>FRANCESCO A. FRAPPA,<br><br>Defendants. | C.A. No. 14-440-MSM |

**PLAINTIFF ALIFAX HOLDING SPA'S PROPOSED PRELIMINARY JURY INSTRUCTIONS**

Plaintiff Alifax Holding SpA ("Alifax") provides the following proposed preliminary jury instructions, which are primarily derived from the preliminary jury instructions given on April 15, 2019, during the liability phase of the first trial in this matter, and on May 1, 2019 during the damages phase of that trial, with certain modifications to the content and order of instructions to take into account the current procedural posture.[1]

Alifax reserves the right to amend, supplement, or modify these proposed instructions as the case proceeds and as the parties meet and confer.  Alifax further reserves the right to amend, supplement or modify these instructions based on any Court ruling(s) on any forthcoming motions *in limine* or on any legal/procedural questions briefed by the parties pursuant to the Court's November 7, 2024 Text Order (Dkt. 377).

---

[1] Alifax has also added headings to the instructions for ease of reference.

1

**DUTY OF THE JURY**

So you've been sworn in now, and I'm going to give you some preliminary instructions about your role as jurors in this case. There are some specific issues that should be discussed with you upfront so you understand a little bit better what you're doing here. Some of that has been covered in the video(s) that you watched and so you have some understanding.

First of all, as the jurors in this case, it is your duty to find from the evidence that's introduced here in the trial what the facts of this case are. And it's you and you alone who will be the judges of the facts. You'll then have to apply those facts to the law that I will give to you, both now, but, more importantly, at the end of the trial when I give you the final jury charge. And you must follow that law whether you agree with it or not. And nothing that I may say or do during the course of the trial is intended to indicate to you what I think the facts are or should be taken by you as indicating what the facts are. That is solely a matter for you as the jury to decide.

**SUMMARY OF CASE**

Now, as I explained to you at the time of jury selection and just now, there are two parties in this action. The plaintiff in this case is Alifax Holding SpA. and the defendant is Alcor Scientific, Inc.

I suspect that all of you have had your blood samples taken at some time. This dispute is about devices used to test patient blood samples to detect signs of inflammation in the human body. As you will hear, when there is any kind of inflammation in the body, a person's blood cells behave differently. The devices in question measure those differences, specifically how quickly the red blood cells in a blood sample group together. You will hear that referred to as the erythrocyte sedimentation rate or ESR, the rate at which red blood cells or erythrocytes in a blood sample separate from the blood plasma and form a sediment in a sample tube.

The devices that are going to be discussed perform a test and those devices are known as automated ESR analyzers.

Both Alifax and Alcor developed and sold competing ESR analyzers.

A prior jury that was empaneled in this Court found that Alifax had trade secrets relating to its automated ESR analyzers and that Alcor misappropriated certain of those Alifax trade secrets in violation of Rhode Island General Laws Section 6-41-1, the Rhode Island Uniform Trade Secrets Act.

In general, a trade secret is information (1) that is not generally known or readily ascertainable, (2) that derives independent economic value from its secrecy and (3) that is subject to reasonable efforts to maintain its confidentiality. This trial concerns one of those trade secrets.

3

The trade secret at issue here is a part of the computer program source code that an automated ESR analyzer uses to calculate the result for a blood sample being tested.  You will hear it referred to as the "conversion algorithm."  Alifax developed a trade secret conversion algorithm that contained four unique numeric constants.

The prior jury found that Alcor's misappropriation of Alifax's trade secrets was willful. The prior jury's verdict is the law of the case and you are not to second guess that jury's determination.  The only thing you are going to decide in this trial is the appropriate measure of damages that Alifax should receive as  a result of Alcor's misappropriation of the conversion algorithm trade secret.

Your task will be to determine the amount of damages that result from Alcor's misappropriation of Alifax's trade secret.

**BURDEN OF PROOF**

I'm going to give you more detailed instructions about the measure of damages at the conclusion of the evidence, but I want to give you an idea now of kind of evidence you will hear and the burdens that each party will have in presenting its evidence.

The law provides that the Plaintiff, Alifax, is entitled to damages equal to the unjust enrichment that the Defendant, Alcor, obtained from its misappropriation of the Alifax trade secret. To prove the amount of Alcor's unjust enrichment, Alifax has the burden to prove what Defendant Alcor made in gross sales as a result of misappropriating the Alifax trade secret. Alifax has the burden of establishing that by a preponderance of the evidence.

Then the Defendant Alcor has the burden of establishing by a preponderance of the evidence any portion of those gross sales that it contends are not attributable to the trade secret and any other expenses that should be deducted from those gross sales numbers in order to determine net profits attributable to the misappropriated trade secret.

After all the evidence is presented, each party will argue what the evidence shows and what the extent of Alcor's unjust enrichment is.

When discussing the burden on each party in this matter, I just referred to the "preponderance of evidence." Under this standard, the evidence must persuade you that the something is more probably true than not true. If you imagine an old-fashioned scale, the party with the burden of proof by a preponderance of evidence has to make the scale tip in its favor, even if just by a small amount. That's a preponderance of evidence.

Many of you have heard the term "proof beyond a reasonable doubt." That's a standard that only applies in criminal cases. It has no application in civil cases, and you need to just put anything you know about or have experienced about that standard out of your mind. That is a higher burden of proof that we use only in criminal cases.

**EVIDENCE - DEFINITION**

Now that I've given you this overview of the claims and other matters, I'm going to tell you a few other things that will guide you generally in your duties as the jury in this case. So you are going to find the facts of this case from the evidence that is presented here in this courtroom. The evidence will consist of testimony of witnesses, documents and other things that are received into the record as exhibits and any facts that the lawyers have agreed to or stipulated to or that I, as the Court, may tell you that you have to find as facts that are proven.

Certain things are not evidence and may not be considered by you as determining what the facts of the case are. First, statements, arguments and questions by lawyers are not evidence. Objections to questions are not evidence. Now, keep in mind that lawyers have an obligation to their clients to make objections when they believe that the evidence that is being offered is improper under the Rules of Evidence, and you should not be influenced by any objection or by my ruling on it. If the objection is sustained, then you can ignore the question.

If the objection is overruled, then you should treat the answer like the answer to any other question. And if at any point I instruct you that some item of evidence is received for a limited purpose only, then you must follow that instruction and apply it only for that purpose.

Any testimony or other information that I have excluded or told you to disregard is not evidence and must not be considered by you. So, for example, if a question is asked of a witness and there's an objection and I sustain the objection but the witness answers it anyway, I may say to you, "disregard that answer, I've excluded it," and you have to disregard that answer.

And then finally, anything you may have seen or heard outside of the courtroom is not evidence and must not be considered by you. So as I've said before many times, you have to decide this case based only on the evidence that is presented here in this courtroom.

6

**EVIDENCE – DIRECT AND CIRCUMSTANTIAL**

There are two kinds of evidence: direct evidence and circumstantial evidence.

Direct evidence is the direct proof of a fact, sometimes such as the testimony of a witness who has observed something or is testifying to something that he or she personally did. That's direct evidence. Circumstantial evidence is proof of certain facts from which you can infer or conclude that another fact exists.

Let's say you get up in the morning, you look outside, everything's covered in water, but it's bright and sunny outside. You can conclude that it rained overnight even though you didn't have any direct evidence; that is, you didn't see it rain, but you have a lot of circumstantial evidence that it rained. The street is wet, the grass is wet, the car is wet, so forth. That's all circumstantial evidence is.

Now, obviously not all situations or examples of circumstantial evidence are that simple and clear, but you get the gist. It's a proof of certain facts from which you can conclude something else is true.

7

**WITNESSES – CREDIBILITY**

It will be up to you to decide which witnesses to believe and which witnesses not to believe and how much of any witness's testimony to accept or reject. The law makes no distinction between direct and circumstantial evidence, so keep in mind that you may consider both kinds of evidence in determining the facts of this case.

At the end of the trial I'm going to give you some guidelines to help you determine the credibility of witnesses in the case. During this trial you may hear from a witness who claims to have specialized knowledge in a technical field. Sometimes we refer to such witnesses as expert witnesses. And because of the fact that they have specialized knowledge of some type, they are permitted to express opinions which may be helpful to you in determining what the facts of the case are.

You're not required, however, to accept their opinions just because the witness has specialized knowledge. I'll give you more detailed instructions at the close of the trial concerning the assessment of witness testimony. In general, however, opinion testimony should be judged by you just like any other testimony. You may accept it or reject it or give it as much weight as you think it deserves considering the witness's education and experience, the reasons given for the opinion and all of the other evidence in the case.

**WITNESSES - FOREIGN LANGUAGE TESTIMONY**

There may be some testimony in this case in a foreign language -- I mentioned this at empanelment -- one or more witnesses may testify in Italian. Witnesses who do not speak English fluently or are simply more proficient in another language may testify through an official court interpreter. Some of you may know or understand some of the Italian language. It's important that all jurors consider the same evidence and so therefore you must accept the interpreter's translation of the witness's testimony, and you may not substitute your own perceived understanding of what the witness may be saying and you must disregard any different meaning.

Furthermore, you're prohibited from making any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party in testifying and presenting evidence.

## DEPOSITION TESTIMONY

During this trial some evidence may be presented to you in the form of deposition testimony.    A deposition is the sworn testimony of a witness that is taken before trial. The witness is placed under oath to tell the truth -- is sworn to tell the truth, and the attorneys for each party can ask the witness questions. The questions and the answers are recorded by a stenographer just like we have here in court today and sometimes they're recorded on video.

Now, you should consider deposition testimony presented to you in court in lieu of or in addition to live testimony just as if the witness had been present to testify.

**CONDUCT AS JURORS**

Now, a few words about your conduct as jurors in this case. Some of this you've heard before. It's very important that you keep an open mind throughout the trial and not decide what you think the verdict should be until you and your fellow jurors have had a chance to complete your deliberations at the end of the case.

Because you must decide this case based only on the evidence that's received during the trial and on my instructions on the law that applies, you must not be exposed to any other information about the case or any of the issues involved during your jury duty. So until the end of the case or until I tell you otherwise, you may not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of this case or anything that has to do with this case. This includes discussing the case in person or in writing or by phone or electronic means; e-mail, text message, internet chats, blogs, Facebook, LinkedIn, YouTube, Myspace. You get the picture.

And it applies to communicating with your fellow jurors as well until you have the case for deliberations. So what that means is when you're off in the break room having your snacks and so forth, you can talk about sports and you can talk about the weather, but you can't talk about the case so keep that in mind. And that's sometimes difficult because you don't really have anything else in common other than the fact that you are sitting here on this case and you're going to have a lot of questions, I guarantee it, but you can't start talking about it until it's your turn for deliberations at the end of the trial, okay.

This also means you can't discuss it with your family members, your employer, the people involved in the trial, although you of course can notify your family and employers that you're sitting on this jury and you have obligations here. But if they ask or if anyone asks you

11

about the case, what's it about, what's going on, who are the lawyers, what do you think, those kinds of questions, you can't have those conversations.

Now, if there were to be anything reported about this case, I don't expect there will be, but if there were, in newspapers, radio, television, any of that, you're not to read, watch or listen to anything having to do with it, and you're not to do any research of any kind, traditional research in a library or in a bookstore or going on the internet and looking up terms or reference materials, Googling anything, that sort of thing; you're just not to do that. The law requires these restrictions in order to ensure that these parties have a fair trial that is based only on the evidence that is presented here in the courtroom and that each party has had an opportunity to address, both directly and then to cross-examine and so forth.

A juror who violates these restrictions not only jeopardizes the fairness of these proceedings, but it could result in a mistrial and that is a big deal. That means this whole process has to start over. And although you're here now and you're ready for the trial, you need to understand that a lot of work goes into getting a case ready for trial, years of work. And it would be very disrespectful to all these people who have prepared so hard for this trial, you know, flown here from other countries, they're here for the trial now. But more important than all of that, it would be hugely disrespectful to your fellow jurors who are taking time away from their families and work and inconveniencing their lives if this trial were to have to be stopped because somebody violated one of these rules.

So I'm admonishing you in the strongest terms possible to respect these rules that I've given you. And I know it's hard because there's going to be so much that you don't understand and you're going to be struggling to understand, and I totally respect that and the lawyers get it, they understand what their job is. Their job is to educate you as we go through this trial. So, you

12

know, that's their job. And if you were to feel a burden to take it on yourself and start

independent research, it could jeopardize the whole thing. So I trust you'll respect that rule.

.

**OVERVIEW OF TRIAL PROCEEDINGS**

This is how the trial is going to proceed. First, the lawyers will give opening statements. That is their opportunity to outline for you or summarize for you what they expect the evidence in this case is going to show. And they'll put that in the context of the legal framework that I've given you.

Once that is over, Alifax will begin – Alifax is the plaintiff -- and they'll present evidence in support of their requested damages. And then Alcor's lawyers may cross-examine the witnesses who were presented by Alifax. And then at the conclusion of the plaintiff's case, Alcor will have the opportunity to introduce evidence, and Alifax's lawyers will get to cross-examine those witnesses.

And after all of that evidence is completed, the lawyers will make closing arguments to you; that is, they will argue to you what they think has been proven by the evidence that's been introduced. And then I'd just remind you that what is said in opening statements and closing arguments by the attorneys is their attempt to tell you what the evidence will show and what the evidence has shown, but it's not evidence in and of itself. The evidence is what you hear from the witness stand, the documents and so forth that are introduced. And then when it's all over, all the evidence, I'm going to give you my instructions, a more detailed version of what I just gave you, and you'll retire to the jury room to deliberate to a verdict.

So the last thing I want to tell you is that the schedule we're going to keep is generally going to be _____

14

Date: January 17, 2025

Respectfully submitted,

*/s/Joshua A. Friedman*
Michael J. Daly (#6729)
Pierce Atwood LLP
One Financial Plaza, 26th Floor
Providence, RI 02903
Tel: (401) 588-5113
Fax: (401) 588-5166

Todd R. Tucker (*Admitted Pro Hac Vice*)
ttucker@calfee.com
Joshua A. Friedman (*Admitted Pro Hac Vice*)
jfriedman@calfee.com
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
Tel: (216) 622-8200
Fax: (216) 241-0816

*Attorneys for Plaintiff Alifax Holding S.p.A.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system on the 17th day of January 2025 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

> _/s/Joshua A. Friedman_
> One of the Attorneys for Plaintiff

16