# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| ALIFAX HOLDING SPA, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 1:14-CV-00440-MSM-LSA |
| ALCOR SCIENTIFIC INC. and FRANCESCO A. FRAPPA, | ) |
| Defendants. | ) |

## ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the parties' joint motion on twelve legal and procedural questions concerning the scope of the upcoming damages trial. (ECF No. 381.) Below, the Court addresses each issue.[1]

1. **The scope of any motions in limine (i.e., whether the parties can object to evidence that was admitted in the liability phase of the trial).**

The parties have agreed to submit individualized pretrial filings about the admissibility of evidence. Accordingly, the Court will not separately and preemptively limit the evidence by issuing a broad decree about admissibility.

That said, the Court will review the parties' specific motions in limine with two considerations in mind. First, the Court recognizes that Alcor has already been found

---

[1] The Court phrases each issue as the parties did in their joint motion (ECF No. 381).

liable and that the remaining issue is damages. Alcor will not, as Alifax frets, be permitted to "undo the liability phase at every turn." (ECF No. 383 at 6.)

Second, past judicial determinations about a piece of evidence's admissibility at the liability phase are binding, of course, but—depending on the context of a specific piece of evidence—those determinations may be irrelevant in the damages phase if the legal issues are distinct. *See Pepper v. United States*, 562 U.S. 476, 506 (2011) (explaining that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). For all motions in limine about evidence admitted during the liability phase, the Court instructs the parties to provide all relevant record citations about the evidence's previous admission, as well as a succinct discussion of the similarity (or dissimilarity) of the legal issues considered at the liability phase.

2. **Assuming a jury trial, whether new jury instructions are necessary.**

The parties agree that some changes to the jury instructions will be necessary. (ECF No. 382 at 10–11; No. 385 at 7.) The dispute here is one of degree. Alifax suggests that only "minor modification" is required. (ECF No. 385 at 7.) Specifically, Alifax explains that necessary modifications "include removal of reference to a CPS trade secret that is no longer in the case and inclusion of foundational instructions from the liability phase on items such as weight of the evidence." *Id.*

Alcor, in turn, submits that references to "the liability phase without adequate context" pose problems, as do jury instructions referencing evidence not presented in

the new trial. (ECF No. 382 at 10–11.) Further, Alcor takes issue with the damages burden-shifting framework from the first damages trial, as detailed in Issue 6.

The Court has considerable discretion over the realm of jury instructions. *See Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 352 (1st Cir. 1998). It will use that discretion to fashion instructions suitable for this jury in the unique context of this case. For now, it is likely that the Court will adopt the two modifications that Alifax submits, pending any objection from Alcor; it will also take care to ensure that references to the liability phase or evidence from it will not be devoid of context. As explained below, the jury will also be instructed on the burden-shifting framework, and it will not be instructed that this is only an "acquisition" case. But as discussed at the January 31, 2025, conference, the Court will reserve all other rulings about jury instructions for a day closer to trial.

3. **Assuming a jury trial, whether the jury will be informed that the misappropriation was "willful and malicious."**

During the liability phase, the jury found (1) that Alcor misappropriated Alifax's conversion algorithm trade secret and (2) that the misappropriation was "willful and malicious." (ECF No. 292 at 3.) Now, the jury must determine the extent of the "unjust enrichment caused by the misappropriation." R.I.G.L. § 6-41-3(a) ("Damages can include … the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.").

The liability jury's finding that the appropriation was "willful and malicious" has little to no probative value for the jury's inquiry at the damages trial, based on the statute's text and the applicable burden-shifting framework described in Issue 6.

Under the Rhode Island Uniform Trade Secrets Act ("RIUTSA"), if the jury specifically finds that a defendant's trade secret misappropriation was "willful and malicious," then "the court may award exemplary damages in an amount not exceeding twice an award" given by the jury. R.I. Gen. Laws § 6-41-3(b); *see also Astro-Med, Inc. v. Plant*, C.A. No. 06-533-ML, 2008 WL 2883769, at *2–*3 (D.R.I. July 25, 2008). But the jury's damages question is confined to §6-41-3(a). And under the burden-shifting framework, the damages question is best described as "an accounting of the defendant's profits on sales attributable to the use of the trade secret." Restatement (Third): Unfair Competition § 45, cmt. f (Am. Law Inst. 2019).

The Court struggles to see how the liability jury's finding that the appropriation was "willful and malicious" bears any relevance to these inquiries, given that liability is a given. The prejudicial effect of this information thus substantially outweighs any probative value. *See* Fed. R. Evid. 403. But this is hardly a windfall for Alcor; the Court understands that the liability jury's finding has already triggered the Court's duty under § 41-6-3(b) to "calculate the amount of exemplary damages" following the new jury verdict on damages.

Accordingly, the Court will preclude any references to the previous jury finding that the appropriation was "willful and malicious."

### 4. Whether parties may designate testimony from the liability phase to provide context.

The Court will allow the parties to designate testimony in the manner described by *New York v. Microsoft Corp.*, No. 98-cv-1233, 2002 WL 650014, at *1 n.1 (D.D.C. Apr. 12, 2002). Alifax will provide the Court with copies of portions of

4

testimony from the liability phase of the trial, and Alcor shall provide it with any counter designations. These must "be accompanied by succinct argument which addresses the relevance of the prior testimony to the remedy proceedings, as well as whether consideration of such evidence runs contrary to the already-established law of the case." *Microsoft Corp.*, 2002 WL 650014, at *1 n.1. On a more complete record, the Court will "make a case-by-case determination as to whether the designated portions of testimony may properly be considered" at trial. *Id.*

This balanced approach best serves the parties, the jury, and the Court. On the one hand, the Court recognizes the real problems that can arise from witnesses taking the stand again after five years; this approach would allow everyone to avoid "extensive and exhaustive impeachment" by keeping the scope of live testimony focused on damages. (ECF No. 385 at 9.) There are also Federal Rules of Evidence and Civil Procedure that permit past testimony, some seemingly relevant here. *See, e.g.*, Fed. R. Civ. P. 32(a)(3); Fed. R. Evid. 801(d)(2). On the other hand, there is plenty of authority recognizing the superiority of live testimony. *See, e.g.*, *Loinaz v. EG & G, Inc.*, 910 F.3d 1, 8 (1st Cir. 1990) (explaining that reading transcripts is "less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person"). Only on a case-by-case basis can the Court determine if reading past testimony into the record (1) complies with applicable law and (2) best serves the fair, efficient, and accurate adjudication of the damages question.

That said, the Court instructs the parties to be highly selective in their designations. Liability has been established and it will not be relitigated; further, Alifax has other opportunities to give the jury context for this case: voir dire, opening and closing statements, and jury instructions.

5. **Whether Alcor's damages trial exhibits should be supplemented, and, to the extent use is still in the case per Issue #8 below, whether Alifax can inspect Alcor's source code and bit bucket.**

In a 2021 order concerning the scope of evidence in a new trial, the previous district court explained, "Discovery in this case was extensive. More than four years elapsed between the filing of the original Complaint [in 2014] and the final close of discovery [in 2019]." *Alifax Holding Spa v. Alcor Sci. Inc.*, No. 14-440-WES, 2021 WL 3022697, at *2 (D.R.I. July 16, 2021) ("*Order on New Trial Scope*"), *rev'd in part on other grounds, Alifax Holding SpA v. Alcor Sci. LLC*, No. 2022-1641, 2024 WL 2932910 (Fed. Cir. June 11, 2024) ("*Federal Circuit Decision*").[2] Over that time, the court had "issued dozens of written decisions regarding discovery disputes and substantive motions." *Order on New Trial Scope*, 2021 WL 3022697, at *2. "At some point," the court explained, "enough is enough, and that point has long passed." *Id.*

All that is to say: that point had already "long passed" four years ago. The Court will not allow Alifax to supplement the trial exhibit. The reasons are manifold, including judicial efficiency and fairness to Alcor; Alifax's proposal will more than double the damages period at issue—from six years (2012 to 2018) to thirteen (2012

---

[2] To avoid confusion, the Court will follow the Federal Circuit's lead in re-titling previous decisions that all bear the parties' names.

to 2025). *See Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 267 (1st Cir. 1993) ("[T]he discovery deadline had long since passed and the district court had no automatic obligation to reopen the discovery period. The matter was one for the informed discretion of the trial judge, and the breadth of that discretion in managing pretrial mechanics and discovery is very great."); *Oriental Fin. Group, Inc. v. Fed. Ins.*, 483 F. Supp. 2d 161, 167 (D.P.R. 2007) (barring new discovery where "the exclusion of new evidence would not result in manifest injustice to either party").

Nor does the Court see the point in allowing Alifax to reinspect Alcor's source code and Bitbucket again, given that "Alifax already had complete access to the Bitbucket repository multiple times prior to the earlier liability stage of the trial." (ECF No. 384 at 13.)

6. **Whether Alifax bears the burden on proof of damages, without any burden shifting to Alcor.**

During the first damages trial, the court applied the burden-shifting approach laid out in the Restatement (Third) of Unfair Competition. (ECF No. 347 at 32–33.) In pertinent part, the Restatement provides:

> The general rules governing accountings of profits are applicable in trade secret actions. The plaintiff is entitled to recover the defendant's net profits. The plaintiff has the burden of establishing the defendant's sales; the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits.

Restatement (Third): Unfair Competition § 45, cmt. f.

This burden-shifting approach makes sense. After Alifax has proven gross sales attributable to Alcor's misappropriation, placing the burden on Alcor to account

7

for portions of its gross sales not attributable to misappropriation promotes policies underlying trade secret law: making infringement unprofitable, depriving infringers of unjust enrichment, and deterring similar activity. *See Lockheed Martin Corp. v. L-3 Commc'ns Integrated Sys., L.P.*, No. 1:05-CV-902-CAP, 2009 WL 8435667, at *3 (N.D. Ga. Apr. 9, 2009). And unlike Virginia's Trade Secrets Act, which Alcor cites in opposition to the burden-shifting approach, there is no language in the RIUTSA putting the burden wholly on Alifax. *Cf. Pegasystems Inc. v. Appian Corp.*, 904 S.E.2d 247, 270 (Va. App. 2024) ("It is also notable that the key statutory language '[i]f a complainant is unable to prove' is unique to VUTSA. While forty-eight other states have enacted the Uniform Trade Secrets Act (UTSA), the model uniform act does not speak in terms of the complainant 'proving' damages.")

To be clear: nothing in the burden-shifting framework relieves Alifax from its obligation to prove not just any sales, but specifically sales caused by misappropriation. The statute says that damages can include unjust enrichment "caused by misappropriation." R.I. Gen. Laws § 6-41-3(a). And the Restatement makes clear that "the traditional form of restitutionary relief in an action for the appropriation of a trade secret is an accounting of the defendant's profits on sales attributable to the use of the trade secret." Restatement (Third): Unfair Competition § 45, cmt. f; *see also id.* cmt. b. ("The plaintiff bears the burden of proving the fact and cause of any loss for which recovery is sought."). This concept of "sales causation" is consistent with the caselaw. *See, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 68 F.4th 792, 810 (2d. Cir. 2023); *ADA Motors, Inc. v. Butler*, 432

P.3d 445, 448 (Wash. App. 2018) ("plaintiff's initial burden of proof in an unjust enrichment claim under the [UTSA] is to establish sales attributable to the use of a trade secret. Then the burden shifts to the defendant to prove that any of those sales are not attributable to the use of a trade secret.").

It is also consistent with the previous jury instructions at the first damages trial, for which there was no error found. (ECF No. 298 at 9–10 ("Here, Alifax bears the initial burden of proving the existence and extent of damages caused by Alcor's misappropriation … [it] must prove by a preponderance of the evidence Alcor's gross sales attributable to the misappropriation.").)

The Court thus holds that the burden-shifting framework applies, and it will use the same language from the first damages trial's jury instructions on this point.

7. **Whether Alifax is precluded from offering evidence or testimony on Alifax lost profits.**

The parties agree that Alifax "does not intend to offer evidence of lost profits and has indicated a willingness to stipulate to the same." (ECF No. 385 at 15.) The Court today reserves its ruling on this issue, but it will revisit the question if Alifax does not provide the stipulation.

8. **Subject to disposition of Alcor's Motion to Strike Jury Demand, whether the jury should receive an instruction that this is an acquisition case, not a use case.**

According to Alcor, the Federal Circuit "did not disturb the district court's finding that there was insufficient evidence to prove misappropriation under a 'use' theory," so on remand, damages arising from liability must be narrowed to those arising from improper acquisition only. (ECF No. 382 at 18.) After all, the mandate

9

rule "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate court in the same decision." *United States v. Cheveres-Morales*, 83 F.4th 34, 40 (1st Cir. 2023) (internal citation omitted). Put differently, it "requires that the trial court conform with the directions of the appellate court on remand." *Id.* (internal citation omitted).

But in a mandate rule analysis, "everything depends on context." *Id.* at 41. Here is the relevant context, as the Court sees it:

(1) **The statute**. Under the RIUTSA, a defendant can be liable for misappropriation by (a) acquiring a trade secret through improper means (an "acquisition" theory) or (b) using a trade secret of another without express or implied consent (a "use" theory). R.I.G.L. § 6-41-1(1)–(2). Either is sufficient to establish liability.

(2) **The jury verdict**. The liability jury was instructed about both acquisition and use theories. (ECF No. 291 at 36–37.) It found Alcor liable for misappropriating the conversion algorithm trade secret, but the jury form did not ask the jury to determine which theory of misappropriation was satisfied. (ECF No. 292 at 2 (jury verdict form marking "yes" to the question of whether Alifax "has proven by a preponderance of the evidence that Alcor misappropriated the trade secrets" previously identified).)

(3) **The previous district court's decision**. The previous district court then granted a new trial on liability because there was insufficient evidence to

prove misappropriation under a "use" theory. *New Trial Order*, 404 F. Supp. 3d 552, 577–80 (D.R.I. 2019).

(4) **The Federal Circuit's decision**. The Federal Circuit reversed, holding that the previous district court "abused its discretion in finding that the jury verdict regarding liability on the conversion algorithm trade secret was against the clear weight of the evidence." *Federal Circuit Decision*, 2024 WL 2932910, at *6. The previous district court improperly "did not consider whether the evidence could establish that the trade secret was acquired through improper means, which alone is sufficient to satisfy the definition of misappropriation under RIUTSA." *Id.* The Federal Circuit then directed this Court to "enter judgment for Alifax on this issue according to the jury verdict." *Id.* at *7.

With that context in mind, Alcor's argument on this point is unconvincing. The Federal Circuit expressly told this Court twice to enter judgment "according to the jury verdict," which did not distinguish between the two types of appropriation at issue here. *Federal Circuit Decision*, 2024 WL 2932910, at *7 ("Therefore, we direct the district court to enter judgment for Alifax on this issue according to the jury verdict."); *see also id.* at *12 (directing "the district court to reinstate the jury verdict" on the issue of "liability of the conversion algorithm trade secret"). True, the Federal Circuit did not explicitly determine—one way or the other—whether the previous district court's decision about "use" evidence was correct, but it did not need to do so; no matter the answer, the other error was sufficient to reverse its holding. *Id.* at *6.

11

Reversal was necessary because the previous district court failed "to consider whether the evidence could establish that the trade secret was acquired through improper means, which *alone is sufficient* to satisfy the definition of misappropriation under RIUTSA." *Id.* (emphasis added). A holding that was integral to a now-reversed judgment is not the law of the case, particularly considering the Federal Circuit's repeated insistence to restore a jury verdict that directly conflicts with that holding. The Court will not whittle down the scope of liability in flat contradiction to the jury's verdict and the Federal Circuit's clear command to reinstate it.

Accordingly, the Court will not instruct the jury that "this is an acquisition case, not a use case." (ECF No. 382 at 17.)

### 9. Whether Alifax is required to apportion damages and is precluded from offering evidence on the total revenues relating to the iSED

The Court has already held (1) that the burden-shifting framework still applies and (2) that the jury will not be instructed that this is only an acquisition case.

These holdings dictate the outcome here. First, Alcor must apportion the damages at the second step of the burden-shifting framework, after Alifax has proven gross sales attributable to Alcor's misappropriation of Alifax's trade secrets. Second, Alifax will be permitted to offer evidence on total revenues relating to iSED, but it must ensure that these revenues are attributable to Alcor's misappropriation of Alifax's conversion algorithm trade secret to satisfy the first step of the framework. Further, introduction of total iSED revenue must be consistent with the Federal Circuit's order, which recognized that evidence at the new damages trial should come

12

from "previously disclosed witnesses" and previously disclosed exhibits that can "address the damages issues." *Federal Circuit Decision*, 2024 WL 2932910, at *10.

10. **Whether Alifax is precluded from offering evidence on non-iSED products/convoyed products (e.g., test cards)**

Alcor takes one part of the Federal Circuit's decision to be binding on this question: its observation that, at the first damages trial, "no evidence or any other witness" beyond Mr. Bokhart "had established the relationship between convoyed sales and the conversion algorithm trade secret." *Federal Circuit Decision*, 2024 WL 2932910, at *7. But the Circuit made that statement to explain why Mr. Bokhart's testimony went far outside Rule 1006; the very next sentence shows as much. *Id.* ("Therefore, Mr. Bokhart's testimony must have relied on his accounting expertise."). In other words, the Federal Circuit did not make that statement to confirm the previous district court's finding about a lack of non-iSED products in the available record. (ECF No. 382 at 23.)

In fact, the Federal Circuit expressly reversed that finding.[3] "The finding that Mr. Bokhart was the sole damages witness is not supported in the record." *Federal Circuit Decision*, 2024 WL 2932910, at *9. The Federal Circuit stated, with approval, that at the new damages trial, Alifax "seeks to introduce Alcor's sales record of iSED devices and accessories through other fact witnesses already disclosed in the pretrial memoranda." *Id.* Further, it stated, "At least some of the fact witnesses that Alifax

---

[3] Alcor's reliance on obviously-overruled portions of the previous district court's orders and out-of-context quotes from the Federal Circuit is troubling. (ECF No. 382 at 23.) This Court understands that the "history of this case is replete with … dubious litigation practices" but it has little tolerance for that. (ECF No. 360 at 7.)

13

proposes to call at the new trial for damages are listed in the pretrial memorandum." *Id.* So if Alifax can show that this evidence was already disclosed, its admission is permissible based on the Federal Circuit's instructions. Alifax has suggested that the "test card revenue data is on the very same spreadsheet that Alifax will already be presenting to demonstrate revenues." (ECF No. 383 at 15.)

Admitting this evidence, combined with excluding Mr. Bokhart's testimony, would remedy the fatal flaw in the first damages trial: Mr. Bokhart's inappropriate and overexpansive testimony about documents and materials not already before the jury. *New Trial Order*, 404 F. Supp. at 580–82. "At the time of Bokhart's testimony," the previous district court observed, "there was no evidence from any other witness about test cards, diagnostic services or any other ancillary products that allegedly generated iSED-related revenues." *Id.* at 582. But with that evidence properly in the record, a damages calculation considering test cards, diagnostic services, and ancillary products related to the misappropriation seems relevant and fair.

So as long as evidence relating to non-iSED/convoyed products comes from previously disclosed witnesses and exhibits, the Court will likely admit it.[4]

---

[4] If there are other distinct evidentiary issues with the evidence discussed in Issues 9 and 10, Alcor should raise those issues via motions in limine. That is especially true for the evidence discussed in Issue 10, given that much of it was presumably not previously admitted for purposes of damages.

14

11. Whether Alifax is precluded from offering a theory of head-start damages and its damages are limited to the value to Alcor, if any, of acquiring the specific integers in the 2012 timeframe

The previous district court held that, because "Alifax did not disclose any damages witnesses besides Bokhart," it would necessarily be unable to meet its burden of producing head-start damages. *Order Precluding Damages*, 2021 WL 3911258, at *3 (D.R.I. Sept. 1, 2021); *see also id.* at 1 (explaining that, although there is evidence of a head start, "there is no admissible evidence tying that head start to a measure of unjust enrichment").

The Federal Circuit reversed this holding. "Because the [previous district] court erred in finding that Mr. Bokhart was the only damages witness that Alifax disclosed, we hold that it abused its discretion in precluding Alifax from presenting any compensatory damages testimony or evidence at the new trial from previously disclosed witnesses who could address the damages issues." *Federal Circuit Decision*, 2024 WL 2932910, at *10. Although the Federal Circuit uses the term "compensatory damages," rather than head-start damages, it was clearly referring to head-start damages. After all, following its reversal of the previous district court's refusal to admit "compensatory damages," the Federal Circuit cites the trial document it reversed, *Order Precluding Damages*. *See Federal Circuit Decision*, 2024 WL 2932910, at *10 (citing *Order Precluding Damages*, 2021 WL 3911258, at *2–*3). And that order specifically discusses head-start damages related to the conversion algorithm at the pin cite the Federal Circuit provides. *Id.* With that context, the

15

Federal Circuit's instruction that Alifax should be able to present "compensatory damages evidence" clearly encompasses head-start damages.

Nor is it true that the head-start theory was only related to the signal acquisition trade secret. The previous district court discussed the relationship between head-start damages and the conversion algorithm, *Order Precluding Damages*, 2021 WL 3911258, at *2–*3, and its finding that there was no evidence linking the two was reversed. *See Federal Circuit Decision*, 2024 WL 2932910, at *10.

Finally, because this Court has already held that this case is not just an "acquisition" case, the damages are not limited to the 2012 acquisition period. Still, they are limited in the other ways described throughout this order.

12. **Whether Alifax is precluded from referring to the CLIA designation as a basis for damages.**

As discussed during the January 31, 2025, conference, the Court reserves its ruling on this issue. If Alifax still seeks to preclude the CLIA designation, the Court instructs it to file a motion in limine together addressing (1) any law of the case issues and (2) all other evidentiary issues.

## CONCLUSION

The Court's holdings can be summarized as follows:

1. The Court will consider motions in limine individually, but liability will not be relitigated at every turn.

2. Modifications to the first damage trial's jury instructions are necessary, but the Court reserves its ruling on the final jury instructions.

3. References to the liability jury's finding that the appropriation was "willful and malicious" are precluded based on Fed. R. Evid. 403.

4. The parties will selectively designate relevant testimony from the liability phase for the Court's consideration, as detailed above.

5. Trial Exhibit 173 will not be supplemented, and Alifax will not be permitted to inspect Alcor's source code and Bitbucket.

6. The burden-shifting framework from the Restatement (Third) of Unfair Competition will be applied, as detailed above.

7. The Court reserves its ruling on this issue but will revisit it if Alifax does not provide the needed stipulation.

8. The jury will not receive an instruction that this is an "acquisition" case, not a "use" case.

9. Under the burden-shifting framework, Alcor is required to apportion damages, and Alifax can offer evidence revenues related to the iSED devices, as long as that evidence complies with the Federal Circuit's decision as described by this Court and there are no other evidentiary issues.

10. Alifax can offer evidence on non-iSED/convoyed products, as long as that evidence complies with the Federal Circuit's decision as described by this Court and there are no other evidentiary issues.

11. Alifax can seek head-start damages, and its damages are not limited to the 2012 acquisition period.

12. The Court reserves its ruling on the admission of the CLIA designation.

17

IT IS SO ORDERED.

*[signature: Mary S. McElroy]*

_____
Mary S. McElroy,
United States District Judge

February 4, 2025