**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

ALIFAX HOLDING SPA,

           Plaintiff,

v.                                                                                      C.A. No. 14-440-MSM

ALCOR SCIENTIFIC INC.,

           Defendant.

**DEFENDANT'S OBJECTION TO PLAINTIFF'S
EXPEDITED MOTION FOR CLARIFICATION AND TO COMPEL**

Having elected to pursue damages under a theory of unjust enrichment, Alifax has **always** borne two burdens of proof in this stage of the trial, a point acknowledged in its proposed jury instructions, where Alifax asked the Court to instruct the jury that "if you find that Alifax has proved that Alcor benefitted from using the conversion algorithm trade secret, you may award the monetary value you find has been proven by a preponderance of the evidence to be attributable to that benefit." Dkt. No. 387-4 at 21. Precedent is clear that Alifax bears these distinct burdens, and the Court's September 8, 2025 Order (the "Order") did nothing to change Alifax's burden of proof. *Contra* Dkt. No. 419 at 5 (complaining that the "Court's Text Order assign[ed] Alifax the burden of proving Alcor's benefit").

Nevertheless, Alifax filed its Expedited Motion[1] to suggest that the Order somehow worked an unexpected sea change on its trial strategy. *See* Dkt. No. 419 at 1-2 ("the Court appears to have found that it is Alifax's *affirmative burden* to prove use (i.e., benefit) as a prerequisite to proving the damage amount" and "[t]he Court's Text Order and Limine Order

---

[1] Plaintiff's Expedited Motion for Clarification on Admissible Exhibits and for Disclosure of Underlying Data Under the Federal Rules of Procedure and Evidence or, in the Alternative, Exclusion of Mr. Smith's Expert Analysis, Dkt. No. 419, hereinafter "Expedited Motion."

combined effectively realign the parties' burdens and consequent presentation of evidence at trial") (italics in original).  Given its proposed jury instructions, it is difficult to see how Alifax is just coming to grips with its burdens of proof, but even if that were the case, the Court still should deny the Expedited Motion.

The second half of Alifax's Expedited Motion is an untimely Motion to Compel/Motion in Limine relating to native files and metadata "underlying" Trial Exhibit 505.[2]  Dkt. No. 419 at 2.  Alifax brings this Motion — for the first time — more than six (6) years after Trial Exhibit 505 was admitted at the first trial with *no objection* from Alifax, Mr. Smith testified about that Trial Exhibit at trial, and Alifax had every opportunity to cross-examine him about it.  The Omnibus Motion in Limine that Alifax filed earlier this year makes no specific reference to Trial Exhibit 505.  *See* Dkt. Nos. 401 (Motion), 410 (Reply).  But now, Alifax bizarrely argues that if Mr. Smith again testifies about Trial Exhibit 505, Alifax will only have "minutes" to review Trial Exhibit 505 and cross examine him on it, as if it will be ambushed by an Exhibit it has possessed for years.  Dkt. No. 419 at 2.  Not only does that argument make no sense, but if Alifax were entitled to the information it seeks now, it should have sought affirmative relief from the District Judge during the first trial or within the deadlines the Court set for this stage.  It did neither, and the Court should deny that portion of the Expedited Motion, too.

## ARGUMENT

### A.    Alcor Has Not "Opened the Door"[3] and the Court Should Reject Alifax's Request for Reconsideration.

Alifax's Expedited Motion urges the Court to reconsider its prior evidentiary rulings on ten (10) exhibits in light of the Order relating to Mr. Smith: Trial Exhibits 21, 25, 62, 92, 94,

---

[2] Plaintiff appended Trial Exhibit 505 as Dkt. No. 419-12.
[3] *See* Dkt. No. 419 at 1 ("there is no question that Alcor has opened the door to this evidence").

114, 116, 123, 201 and 202.  Dkt. No. 419 at 4-5.[4]  Although Alifax asks for the same broad admissibility determination for all, the Court excluded these exhibits for various reasons, none of which changes because Alcor may call Mr. Smith to testify "on whether the algorithm could produce meaningful ESR results in Alcor's iSED devices."  September 8, 2025 Text Order.  The Court should deny Alifax's Expedited Motion for all ten exhibits.

### 1.    Alifax Already Withdrew Trial Exhibits 201 and 202.

Alcor's Motion in Limine argued that Exhibits 92, 94, 114, 116, 123, 201 and 202 should be excluded because those Exhibits (the "FDA Exhibits") relate to submissions to the FDA in April 2014, i.e., two years after the so-called head start and a year after the first sale of the iSED. Dkt. No. 399 at 11-14.  In its Opposition to Alcor's Motion in Limine, Alifax expressly represented that "it will withdraw Trial Exhibits 201, 202, 204 and 205" (the "Withdrawn Exhibits").  Dkt. No. 405 at 9.  Alifax confirmed that the Court "need not" consider the exhibits Alifax withdrew, including Exhibits 201 and 202.  *Id.* at 6 n.3.  Having expressly withdrawn Exhibits 201 and 202 before the Court even considered the Motions in Limine[5] or the Motion concerning Mr. Smith, Alifax should not be permitted to manufacture a reason to reverse course now.  Alifax has no good faith basis to seek an admissibility change on Exhibits 201 and/or 202, which it already withdrew from this case, and the Court should deny the Expedited Motion relating to Withdrawn Exhibits 201 and 202.

### 2.    The Court Should Deny the Expedited Motion With Respect to the FDA Exhibits as Premature.

For the rest of the FDA Exhibits (92, 94, 114, 116, and 123), Alifax's Opposition to Alcor's Motion in Limine conceded that it is not seeking any monetary damages based on the

---

[4] Pagination references the ECF pagination at the top, not the internal page numbers.
[5] *See* Dkt. No. 408 at 2 (listing exhibits Alifax conceded and/or withdrew).

2014 FDA submission.  Dkt. No. 405 at 11 ("To be clear, this evidence is not offered as a separate damages theory, only to rebut Alcor's potential allegations [sic] of non-use.").  Alifax then expressly argued that it needed latitude to use those FDA Exhibits only to "**rebut** Alcor's theory."  *Id.* (emphasis added).  Put another way, Alifax never argued that it needed any FDA Exhibit for its case-in-chief; rather, it sought only the option to revisit the issue of admissibility in its **rebuttal** case, depending on the evidence Alcor offered and elicited during its defense case.

The Court's August 1, 2025 Order on the parties' Motions in Limine (the "Limine Order") provisionally excluded the FDA Exhibits, including Exhibits 92, 94, 114, 116, 123, and 125,[6] reasoning that the Exhibits and testimony related to the FDA submission are not relevant to Alifax's stated head start theory of a one-year head start resulting from misappropriation occurring in 2012.  Dkt. No. 414 at 3 ("The Court finds that evidence and testimony related to the FDA submission—including, but not limited to, Trial Exhibits 92, 94, 114, 116, 123, 125, 201, and 202—is not relevant to Alifax's stated damages theory of a one-year head start resulting from misappropriation occurring in 2012.").  The Court's Limine Order further provides, however, that "should Alcor **argue at trial** that it never used Alifax's conversion algorithm in the development of the iSED analyzer, the Court will consider narrowly tailored FDA-related evidence solely for the purpose of rebutting that assertion."  *Id.* (emphasis added).

Although Alifax's Expedited Motion reads as if this case were mid-trial and Alcor just put affirmative arguments and evidence before the jury that sparked a request for reconsideration, that obviously is not accurate.  The trial has not even started, Alcor has not argued anything to the jury at this point, and the Order simply permits Alcor to call Mr. Smith to

---

[6] The Court's Limine Order also provisionally excluded Exhibits 201 and 202 as FDA Exhibits, but Alifax had already withdrawn those exhibits by the time the Limine Order entered.  *See* Dkt. Nos. 405 at 6 n.3 (Alifax submission confirming that the Court "need not" consider the exhibits Alifax withdrew, including Exhibits 201 and 202) and 414 at 3 (Limine Order provisionally excluding Exhibits 201 and 202).

testify "on whether the algorithm could produce meaningful ESR results in Alcor's iSED devices." *See* September 8, 2025 Text Order. Contrary to Alifax's arguments, Alcor has not — at this pretrial stage — "opened the door" to conditionally excluded evidence.[7] The Court's Limine Order permits Alifax to revisit the admissibility of the FDA Exhibits and narrowly tailored FDA-related evidence with the Court at the start of Alifax's rebuttal case if Alcor opens that door during trial. *See* Dkt. Nos. 405 at 11 (requesting permission to present evidence "to rebut Alcor's theory") and 414 at 3 ("the Court will consider allowing narrowly tailored FDA-related evidence solely for the purpose of rebutting that assertion"). That is the appropriate timing to request reconsideration. The Court should deny Alifax's Motion with respect to the FDA Exhibits (92, 94, 114, 116, 123, and 125) as premature.

### 3. The Court Should Also Deny the Expedited Motion for the Three Remaining Exhibits (21, 25 and 62).

Alifax's Expedited Motion links Trial Exhibits 21 (Dkt. No. 419-2) and 25 (Dkt. No. 419-3) to Alcor's work with Hospitex circa 2010. Dkt. No. 419 at 4. It argues that Trial Exhibit 62 (Dkt. No. 419-4) is an agreement from Alcor to pay Mr. Frappa "a royalty for stealing and turning over Alifax's technology." Dkt. No. 419 at 4.

In its Omnibus Motion in Limine, Alcor argued that Trial Exhibits 21 and 25 both relate to liability and willfulness and should be precluded on that basis. Dkt. No. 399 at 26-27. Alcor argued that Trial Exhibit 62 is relevant only to the issue of willfulness. *Id.* at 27-28. Alifax's Objection argued that Trial Exhibits 21 and 25 would be relevant at this trial "to the extent Alcor is arguing that it never used the conversion algorithm." *See* Dkt. No. 405 at 25-26. Citing trial testimony from Mr. Frappa, Alifax argued that Trial Exhibit 62 "demonstrates the timing of Alcor taking possession of Alifax's algorithm several months prior to the AACC show as well

---

[7] Dkt. No. 419 at 1, 2.

[as] Alcor's valuation of the algorithm since it agreed to compensate Mr. Frappa for it." *Id.* at 26.

The Court's Limine Order conditionally excluded Trial Exhibits 21, 25 and 62[8] and made clear that "[t]hese materials may not be referenced or admitted unless Alcor affirmatively places at issue its alleged non-use of the four-constant algorithm or lack of motive or technical capacity to use it." Dkt. No. 414 at 5-6. As with the FDA Exhibits, Alifax's Expedited Motion on these Trial Exhibits is premature: Alcor has placed no issues before the jury at this stage, so there is no triggering event to warrant reconsideration of the Court's conditional exclusion of the evidence.

**B.    The Court Should Deny Alifax's Belated Challenge to Trial Exhibit 505 and Request for Native Files.**

The second half of Alifax's Expedited Motion is an untimely motion to compel that should be denied on that basis alone. *Modern Continental/Obayashi v. OSHRC*, 196 F.3d 274, 281 (1st Cir. 1999). It also is wholly misleading.

Alifax's Expedited Motion suggests that Alcor sprang a supplemental report on Alifax right before the last trial, arguing that "[d]ue to the late disclosure of Mr. Smith's report, Alifax was given no opportunity to provide a responsive expert report or to depose Mr. Smith, and Alifax had little time to prepare for cross-examination." Dkt. No. 419 at 7. That is not accurate.

Alcor served the Supplemental Rebuttal Expert Report of Daniel Smith on March 14, 2019, less than one week **after** Alifax served a March 8, 2019 Supplemental Expert Report of Bryan Bergeron, M.D. *See* Supplemental Rebuttal Expert Report of Daniel Smith (Exhibit 1) at ¶ 4 ("this past Friday, on March 8, 2019, Dr. Bergeron issued a Supplemental Expert Report. I rebut those opinions herein."). It takes temerity to claim prejudice by the receipt of a

---

[8] The Court also provisionally excluded Trial Exhibit 92 for this additional reason. Dkt. No. 414 at 5-6.

supplemental *rebuttal* report served one week after Alifax served an affirmative supplemental report by its expert.

In any case — it is notable that Alifax's Expedited Motion attaches no document subpoenas, or document requests, to which it claims this "native" data would be responsive, even though it cites Rule 34(b) for part of its argument.  Dkt. No. 419 at 7.  Instead, Alifax claims that Mr. Smith's March 14, 2019 Supplemental Rebuttal Report was deficient in 2019 because — according to Alifax — Fed. R. Civ. P. 26(a)(2)(B)(ii) requires an expert report to contain "the facts or data considered by the witness in forming" the opinions.  Dkt. No. 419 at 7.

That argument is untimely and wrong: Mr. Smith's 2019 Supplemental Rebuttal Expert Report does contain the facts and data he considered, which likely explains why Alifax never raised this issue to Judge Smith or to this Court within the deadlines for *Daubert* Motions or Motions in Limine.  The 2019 Supplemental Rebuttal Report attaches as Exhibit A "a list of materials that I considered and/or relied upon in reaching my opinions…." Exh. 1 at ¶ 13. Exhibit A to the 2019 Supplemental Rebuttal Report references, *inter alia*, ALCOR-0091905, which is also specifically footnoted in Exhibit B to the Supplemental Rebuttal Expert Report as a source.  (Exh. 1 at Exhibit B).  Years before the 2019 trial, Alcor produced ALCOR-0091905 in native form.  *See* Exhibit 2.  In short, Alifax had the "facts or data" that underpins Mr. Smith's Supplemental Rebuttal Report, including Exhibit B, which became Trial Exhibit 505.

Alcor offered Trial Exhibit 505 (as a PDF) at the first trial, and Alifax interposed no objection:

MR. SCOTT:  Can we publish to the witness only Exhibit 505, please.

Q.    And do you recognize this document, sir?

A.    I do.

Q.    And what is it?

A.    This is a spreadsheet that represents the process we were discussing just before the break.  It's a spreadsheet that shows the iSED integral along with the formulas and calculations both for the Alcor conversion algorithm and the Alifax conversion algorithm along with the results.

MR. SCOTT:  Your Honor, defendants offer Exhibit 505 as evidence.

THE COURT:  Any objection?

MR. STIER:  No, your Honor.

THE COURT:  All right.  505 will be full.  You may publish it.

(Defendants' Exhibit 505 admitted in full)

Trial Tr., Vol. VIII (04-26-2019), at 61:5-22.  Alifax's Expedited Motion acknowledges that Mr. Smith testified at the first trial concerning Trial Exhibit 505, and that Alcor has listed that same exhibit for this trial.  Dkt. No. 419 at 6; *see also* Dkt. No. 386-1 at 3 (listing Trial Exhibit 505 on Alcor's Retrial Exhibit List filed January 17, 2025).

Mr. Smith's Supplemental Rebuttal Report includes Exhibit B as a PDF file, and Trial Exhibit 505 is (and always has been) a PDF file.  Alcor attached that PDF document as an exhibit to the Motion for Reconsideration.  Dkt. No. 415.  Yet now, Alifax demands that Alcor be compelled to "produce the native excel spreadsheet underlying Mr. Smith's conversion algorithm comparison study or else he should be barred from testifying about it."  Dkt. No. 419 at 6.  Even if a Motion to Compel were timely, which it is not, Alifax has no basis to seek that

8

native excel sheet.  Alifax has long had the actual data used for the analysis, and it has had the two algorithms Mr. Smith used (at the top of Exhibit B/Trial Exhibit 505) since March 2019, so it has everything it needs to check Mr. Smith's calculations.

As a final point — Alifax complains that it requested the underlying spreadsheet before Mr. Smith testified at the 2019 trial.  Dkt. No. 419 at 7-8.  It appended an email exchange that begins on April 23, 2019 with counsel identifying witness lineups for the next day, as was required for that trial.  Dkt. No. 419-1.  At 5:31 P.M. on April 24, 2019 (six days into the trial and more than a month after service of the Supplemental Rebuttal Report), Alifax's counsel first requested "the electronic Excel files that Dan Smith used for his supplemental report."  *Id.* at 2.  If it were actually prejudiced by a lack of response, Alifax could have immediately raised the issue to Judge Smith and/or objected to the admission of Trial Exhibit 505.  It did neither.

In short, though Alifax complains it will be "hamstrung" in cross-examining Mr. Smith about Trial Exhibit 505, it made no such complaint when faced with this exact scenario six years ago, and it never raised any sort of evidentiary challenge in the context of its appeal or in a timely Motion in Limine.  Simply put, Alifax's Motion concerning Trial Exhibit 505 is procedurally groundless, untimely, and waived.  The Court should deny that part of the Expedited Motion, too.

9

## **CONCLUSION**

For the foregoing reasons, Alcor respectfully requests that the Court deny the Expedited Motion in its entirety.

Respectfully submitted,

ALCOR SCIENTIFIC INC.

By its Attorneys,

*/s/ Christine K. Bush*
Craig M. Scott, Esq. (#4237)
*cscott@hinckleyallen.com*
Christine K. Bush, Esq. (#5587)
*cbush@hinckleyallen.com*
Laurel M. Rogowski, Esq. *(Pro Hac Vice)*
*lrogowski@hinckleyallen.com*
Mackenzie C. McBurney, Esq. (#10098)
*mmcburney@hinckleyallen.com*
**HINCKLEY, ALLEN & SNYDER LLP**
100 Westminster Street, Suite 1500
Providence, RI 02903
Tel: (401) 274-2000
Fax: (401) 277-9600

DATED:  September 22, 2025

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed through the ECF system on the 22 day of September, 2025 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/ Christine K. Bush*